# THIRD DISTRICT, 1895.

### GEORGE W. PATTEN ET AL. V. HERRING & KELLEY.

No. 1080.

1. **Will—Spendthrift Trust—Exempting Property Devised.**—A testator may by his will create a trust and stipulate that the trust fund shall be exempt from liability for the debts of the cestui qui trust; and it is not material that the exemption be not declared in express terms in the will, if, construing it in the light of the circumstances under which it was executed, the intention to so exempt is manifest or reasonably certain.

2. **Will—Passing Title—Creation of Trust.**—Where a will expressly or by necessary implication creates certain trusts and imposes upon the executor duties which are usually performed by a trustee, he will take such interest or title in the property as is requisite, although the will does not specifically designate him as trustee, nor expressly devise the property to him in trust. See the opinion for a will and attending facts under which it is *Held*, that the title to the property passed to the executor in trust, and not to the beneficiaries.

3. **Probate of Will—Collateral Attack.**—Where the County Court has jurisdiction to probate a will and declare the executor, and does so, questions as to whether or not its rulings were correct, and whether the executor has complied with the requirements of the will, can not be raised in a collateral proceeding.

4. **Practice on Appeal—Exceptions.**—Where there is a statement of facts, and appellant excepts to the judgment of the trial court, it is not necessary to the appeal that he should except also to the court's conclusions of fact and law.

APPEAL from McLennan.    Tried below before Hon. L. W. GOOD-
RICH.

*Robertson & Davis*, for appellants.—1.  The intention of the testator
should control in the construction of the will.    1 Jarm. on Wills (R.
& T. ed.), 643.

2.  The will of Martha Patten vested the title in her executor.  Mc-
Murray et al. v. Stanley, Executor, 69 Texas, 227; 3 Jarm. on Wills
(R. & T. ed.), 55–60.

3.  The creation of a trust in land by a will passes some title to the
trustee.    Walling v. Wheeler, 39 Texas, 485.

4.  Where a will creates certain trusts, and imposes upon the execu-
tors duties which are usually performed by trustees, they will take
such interest in the property as is requisite, although the will fails to
name them as trustees or bequeath the property to them in trust.    7
Am. and Eng. Encyc. of Law, 236, 238, and notes; 1 Perry on Trusts,
sec. 329; Scott v. West, 63 Wis., 529; 3 Jarm. on Wills, 55–60; Am.
Law of Administration, 720.

5.  A testator can control the object of his bounty free from the
debts of the beneficiary.    Nichols v. Eaton, 91 U. S., 716, 730; Gar-
land v. Garland, 24 Am. St. Rep., 682; Wallace v. Campbell, 53 Texas,
229; Peet v. Railway, 60 Texas, 527; Hunt v. White, 24 Texas, 652;
Cooper v. Horner, 62 Texas, 356.

*Herring & Kelley*, for themselves.—1.  The power of the executor, as
presented in the will, can not be enlarged by implication so as to vest
the fee in him in the absence of a devise to that effect, and the court
was correct in holding that "no estate in said land of any kind passed
to the executor by virtue of said will."    He was given a power, but
nothing more.    1 Sug. on Powers, *p. 128; Grout v. Hopgood, 30
Mass., 164; Post v. Hoover, 33 N. Y., 599; Bamforth v. Bamforth, 123
Mass., 282; Campbell v. Beaumont, 91 N. Y., 468; Bills v. Bills, 45 N.
W. Rep., 748.

2.  The estate not having been devised to any one whomsoever, the
fee was cast by the law of descent upon the next of kin, to wit, George
W. and Nathan Patten.    Rev. Stats., art. 1817; Warfield v. English, 11
S. W. Rep., 663; Clendening v. Lanius, 56 Am. Dec., 519; Ware v.
Murph, 33 Am. Dec., 97; Perkins v. Presnell, 6 S. E. Rep., 801; Marsh
v. Wheeler, 2 Edw. Ch. (N. Y.), 158; King v. Ferguson, 2 Nott. & M.
(S. C.), 588; 1 Jarm. on Wills (R. & T. ed.), 643–645; Jackson v.
Schauber, 7 Cow. (N. Y.), 187.

3.  The provision in the will for the support of George W. and
Nathan Patten during their lives does not cut down the estate which
was cast upon them by law to a life estate.    Wallace v. Holmes, 79
Me., 177; Weir v. Stone Co., 44 Mich., 506.

4.  The absolute title cast by descent upon George W. and Nathan
Patten, being equivalent to a devise to them, shuts out all remainders

over. Howard v. Carusi, 109 U. S., 725; Rodenfels v. Schuman, 45 N. J. Eq., 383; Pierce v. Simmons, 19 Atl. Rep., 242; Markley's Appeal, 132 Pa. St., 352; Mitchell v. Morse, 77 Me., 423; McClellan v. Larchar, 45 N. J. Eq., 17.

5. George W. and Nathan Patten, as heirs, having the right to dispose of the property at pleasure, the remainder over is inoperative and void. Jones v. Bacon, 28 Am. Rep., 1; same case, 68 Me., 34; Ramsdell v. Ramsdell, 21 Me., 292; Armstrong v. Kent, 21 N. J. Law, 520; Annin v. Van Doren, 14 N. J. Eq., 144; Hoxsey v. Hoxsey, 37 N. J. Eq., 21; Ide v. Ide, 5 Mass., 500; Merill v. Emery, 27 Mass., 511, 512; Dodge v. Moore, 100 Mass., 335; Schriner v. Smith, 38 Fed. Rep., 901.

6. The court has no power to reform a will. Chambers v. Watson, 56 Iowa, 676.

7. A devise of the use, occupation, and profits of land is a devise of the land itself. 2 Jarm. on Wills (R. & T. ed.), 404; Reed v. Reed, 9 Mass., 372.

8. The right of George W. and Nathan Patten to use and occupy the premises and appropriate the proceeds created at least an estate for life, which, whether legal or equitable, was subject to seizure and sale under execution for their debts. Allen v. Russell, 19 Texas, 87; Rosenfield v. Chada, 10 Neb., 421; Hammond v. Johnson, 6 S. W. Rep., 83; 93 Mo., 198; McCormick v. Gates, 39 N. W. Rep., 657; 75 Iowa, 343.

KEY, ASSOCIATE JUSTICE.—Herring & Kelley brought this suit against George W. Patten, Nathan Patten, and George M. Patten, in ordinary form of trespass to try title, to recover 640 acres of land. They set out their title, claiming to have bought the land under an execution sale made to satisfy a judgment in their favor against George W. and Nathan Patten; and they prayed in the alternative for a receiver to be appointed to take charge of the property and pay off their judgment. All the defendants filed answers, consisting of general demurrers, general denials, and pleas of not guilty. They also stated in their answers, that the property did not belong to the defendants George W. and Nathan Patten, but that it was held by George M. Patten as executor of the will and estate of Martha A. Patten, deceased. The plaintiffs, by supplemental petition, denied that George M. Patten was the executor of Martha A. Patten's estate, and entitled to hold the land as such. They averred, that that question had been adjudicated in the District Court of Hill County, which court held that George M. Patten was not such executor; and they pleaded said judgment as res adjudicata. The defendants, by supplemental answer, excepted to plaintiff's supplemental petition. They also alleged, that the judgment pleaded as res adjudicata was rendered in a collateral proceeding, and had been appealed from and was pending on appeal.

The defendants' exceptions to the plea of res adjudicata were sustained. The case was tried on its merits before the court, without a

jury, and judgment rendered for the plaintiffs for the land, from which judgment the defendants have appealed.

The trial judge filed the following conclusions of fact, which are sustained by the evidence:

"1. I find, that in 1863 one Williams made a deed to Patten Bros., conveying the 640 acres of land in controversy in this suit; that in 1875 defendant George W. Patten executed a deed, signed Patten Bros., conveying said land to Martha A. Patten, an unmarried woman, and only sister of the grantor. I also find, that Nathan Patten directed said deed to be made, knew that it was made, and acquiesced.

"2. I find, that at the date of said deed the firm of Patten Bros. was composed of George W. Patten, Nathan Patten, and Martha A..Patten, and that said deed was made for the purpose of closing the partnership and to set off to Martha her share of the partnership assets, the other partners receiving equal shares in money, $2000 each, said land being estimated at $2000.

"3. I find, that from 1863 and continuously afterward the Patten family, including George, Nathan, and Martha, together with their mother and father, lived upon and occupied said land and carried on a business of running a mill and gin, besides a mercantile business; that both parents died some years ago, leaving said George, Nathan, and Martha in possession of all of said property and business, and they so continued until 1875; that, after the date of the deed to Martha, she and her brother George continued to occupy said land, no change of control or possession being apparent, except that Nathan lived in Houston or Galveston; said deed was not filed or recorded in Hill County; the land is situated in Hill, although for a time it was supposed to be partly in McLennan County, in which county the deed was recorded, April 14, 1875.

"4. I find, that Martha Patten departed this life in 1886, leaving the will, which is in evidence; that said will was duly probated in Hill County, and that George M. Patten qualified as executor under said will. I refer to said will for its terms. I further find, that there has been no apparent change in the possession or control of said premises, except that another member of the family has died, the executor having in fact never visited the place since the death of his aunt, Martha, or in person given any attention to the business concerning said premises.

"5. I find, that on the 8th day of July, 1891, M. D. Herring and D. A. Kelley recovered in the County Court of McLennan County a judgment against Nathan Patten and George W. Patten for the sum of $406.83; that an alias execution on said judgment was levied by the sheriff of Hill County on said land, and the same was duly and legally sold to said Herring & Kelley, and sheriff's deed made to them on the —— of November, 1891."

In addition to the foregoing findings, which are adopted by us, this court finds:

6. Both George W. and Nathan Patten were hopelessly insolvent at the time Martha Patten made the will in question, and she was aware of their insolvency.

7. At the time of Martha Patten's death she owned the land in controversy, ten or fifteen head of horses, about twenty-five head of cattle, some hogs, and the household furniture in her home.

8. Martha Patten was never married; and at the time of her death her father and mother were both dead; she left no sister surviving her, and but two brothers, George W. and Nathan Patten, who were her nearest relatives and her legal heirs.

9. It was shown, that at and before the time Herring & Kelley's execution was levied on the land, they had actual notice of the existence of the deed from Patten Bros. to Martha Patten.

10. At the time this case was tried, 225 acres of the land were in cultivation, the balance was a pasture, and this was probably its condition when the will was made.

11. The will of Martha A. Patten reads as follows:

"STATE OF TEXAS,  }   "WILL.
"McLennan County. }

"In the name of God, Amen. I, Martha A. Patten, an unmarried woman, of the county of Hill, in the State of Texas, but now temporarily in McLennan County, Texas, being of sound mind and disposing memory, but being mindful of the certainty of death, do make, publish, and declare this my last will and testament, and I do hereby revoke any and all previous wills by me made. For the purpose of fully carrying out my purposes, as the same are hereinafter set out, I do hereby name, constitute, and appoint my nephew, George M. Patten, executor of my estate; and it is my desire, that so long as my said executor shall carry out the provisions of this my will, he, the said executor, shall be exempted from the control of the Probate Court, after this my will shall have been admitted to probate, and that my said executor shall not be required to enter into any bond whatever so long as he shall continue to execute my wishes as the same are hereinafter expressed.

"First. I desire that all my just debts existing at the time of my death be first fully paid.

"Second. I desire that at my death my said executor shall take possession of all my property, both real and personal, and shall keep and control the same at my place in Hill County, either by himself or by such agent or agents as my said executor shall select; and it is my will that my brother George W. Patten shall have the sole right to use and occupy my homestead dwelling, lots, and appurtenances thereto, together with such personal property belonging to me as may be necessary and proper, to keep and maintain, for the comfort and convenience of my said brother, George W. Patten, said home place. And my said executor shall from time to time turn over to my said brother

George W. Patten such article or articles of personal property for his exclusive use (without security therefor) as may be required to keep up and maintain for my said brother such a home as under the circumstances of my estate will be right and proper. My said executor is hereby directed to manage and control the balance of my estate in such manner as in his judgment may tend to promote the interest of my said estate, having care to preserve my said estate intact, if possible. And after first paying all proper expenses of management of my said estate, my said executor is directed to pay over to my said brother George W. Patten the net proceeds of my said estate during each year, and as often as may be necessary to supply the wants of my said brother George W. Patten, without waiting for stated periods of settlements. This provision for the support and comfort of my said brother George W. Patten shall continue and be in force during his life. If my brother Nathan Patten shall survive my brother George W. Patten, then on and at the death of the said George W. Patten, the said Nathan Patten shall immediately succeed to the provisions herein made for my said brother George W. Patten. After the death of both George W. Patten and Nathan Patten, it is my will that my executor shall proceed to take an inventory of such of my estate as may be in existence at that time; and after such inventory is taken, it shall be the duty of my executor to convert my said remaining estate into money, without, however, using undue haste, and my said executor is directed to divide the money into two equal parts, one of which parts shall be and become the property of my said nephew George M. Patten, or his nephews if he be then dead, and the other half of said money shall be divided equally among the other children of my said brother Nathan Patten and Martha Patten Boggess. That is to say, each of the other children of Nathan Patten (save George M. Patten) shall receive one-fourth ($\frac{1}{4}$) of the said one-half, and the said Martha Patten Boggess shall receive one-fourth ($\frac{1}{4}$) of said one-half, there being three children of my brother Nathan Patten besides the said George M. Patten.

"Witness my hand, May 10, 1886.

"MARTHA A. PATTEN."

"We, the undersigned witnesses, all above the age of fourteen years, do declare that we each of us subscribed our names hereto in the presence of Martha A. Patten, the maker of the foregoing will, and the said Martha A. Patten called us each to witness this as her will.

"Witness our hands, this 10th May, 1886.

"GEO. A. O'BRIEN,<br>"M. M. BOGGESS,<br>"FLORENCE VAN DUZER,<br>"H. BELL HAMILTON,<br>"FELIX H. ROBERTSON."

· *Opinion.*—The principal question involved in this appeal is the construction of the will of Martha A. Patten. Appellants contend that it is a valid will; that it provides what is sometimes called a spendthrift trust—a fund intended by the testator to be used for the support and maintenance of a designated beneficiary, and not to be subject to the payment of his debts—and that it disposes of whatever property may remain after the death of the beneficiaries of the trust; and that it vested no title or property right in George W. and Nathan Patten that could be reached by their creditors. Appellees present two theories, either of which, if correct, will sustain the judgment. One is, that the will is void; that it makes no disposition at all of the property in controversy, and therefore George W. and Nathan Patten, being Martha Patten's next of kin and heirs at law, acquired title by inheritance, and that appellees' purchase of the land, at the sale made under their execution against said George W. and Nathan Patten, vested title in them. The other contention is, that if the will is not void, it vests in George W. and Nathan Patten a fee simple title to the land in question, and that appellees' purchase thereof at sheriff's sale placed the title in them.

· While there are some decisions to the contrary, it is believed that the weight of authority supports the proposition that a testator may by his will create a trust and stipulate that the trust fund shall be exempt from liability for the debts of the cestui qui trust. Nichols v. Eaton, 91 U. S., 716; Hyde v. Woods, 94 U. S., 523; Broadway Nat. Bank v. Adams, 133 Mass., 170; Baker v. Brown, 146 Mass., 369; Slattery v. Wason, 151 Mass., 266; Garland v. Garland, 87 Va., 758; also in 24 American State Reporter, 682, where in an elaborate note the authorities pro and con are collated and compared. The same principle appears to have been applied in Gamble v. Dabney, 20 Texas, 69, and Wallace v. Campbell & Maxey, 53 Texas, 229.

Some courts have held that property so devised will be liable for the debts of the beneficiary, unless the will expressly provides that such shall not be the case; while others hold, that if, construing the will in the light of the circumstances under which it was executed, the intention to exempt is manifest or reasonably certain, such liability will not exist, although the exemption is not expressly declared in the will. Wales v. Bowdish, 61 Vt., 23; Baker v. Brown, 146 Mass., 369; Stambaugh's Estate, 135 Pa. St., 585. The latter rule commends itself to our judgment. It is certainly proper to read and interpret a will in the light of the circumstances surrounding the testator when he made it (Hunt v. White, 24 Texas, 643); and in Gamble v. Dabney, 20 Texas, 69, the doctrine taught by the cases just cited was applied. It is true that in that case the trust was created by a deed instead of a will; but we see no reason why that fact should make any difference in the rule of construction. It was there held, that the property was not subject to seizure under execution for a debt of the beneficiary, though the deed did not, in express terms, so declare.

With these preliminary observations we take up the will itself, and search for the testatrix's intentions; and if these can be ascertained with reasonable certainty, and they be not unlawful, the will must be upheld.    That more care and precision might have been used in making it is undoubtedly true; but such omission does not necessarily invalidate it.

In 1 Jarman on Wills, page 643, the rule on this subject is stated in this language:   "In the construction of wills the most unbounded indulgence has been shown to the ignorance, unskillfulness, and negligence of testators; no degree of technical informality, or of grammatical or orthographical error, nor the most perplexing confusion in the collocation of words or sentences, will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of its author, the faintest traces of which will be sought out from every part of the will, and the whole carefully weighed together; but if, after every endeavor, he finds himself unable, in regard to any material fact, to penetrate through the obscurity in which the testator has involved his intention, the failure of the intended disposition is the inevitable consequence.    Conjecture is not permitted to supply what the testator has failed to indicate; for as the law has provided a definite successor in the absence of disposition, it would be unjust to allow the right of this ascertained object to be superseded by the claim of any one not pointed out by the testator with equal distinctness."

Does the instrument in question dispose of the testatrix's property in such manner, and with such certainty, as to make it a valid will?   In our opinion it does.    True it is, that it does not by express terms devise or bequeath title to the property to the executor or any one else; and appellees contend, that therefore no title passed to the executor, and that he can assert no right under the will.    To this proposition we can not assent.    Where a will expressly or by necessary implication creates certain trusts, and imposes upon the executor duties which are usually performed by a trustee, he should administer the estate accordingly, and for that purpose will take such interest or title in the property as is requisite, although the will does not specifically designate him as trustee, nor expressly bequeath or devise the property to him in trust. Scott v. West, 63 Wis., 529.

The will under consideration designates George M. Patten as executor, for the purpose, as declared in the will, "of fully carrying out" the intentions of the testatrix as therein expressed; and her desire, that upon her death he should take possession of and control all her property, is also stated in the will.    This latter clause, which is general and includes all the testatrix's property, is qualified and limited by that which immediately follows, declaring that George W. Patten should have the use of certain property during his life.    But the clauses referred to, and others directing the executor to manage and control the balance of the estate, pay the net proceeds to George W.

Patten, and, after the death of both George and Nathan, to sell such as remains on hand, and distribute the proceeds, manifest an intention to create a trust and to vest in George M. Patten, the executor, such title as was necessary to execute the trust. His title is such as will enable him to hold any property owned by the testatrix at the time of her death, against any one not her creditor, or not asserting a right secured by her will.

We can not sanction the proposition that the will, if valid, vests full title to the entire tract of land in George W. and Nathan Patten. Such a construction not only does violence to the punctuation of the will, but, if adopted, it would render almost if not entirely useless the subsequent provisions directing the executor to manage and control the balance of the estate, and, if possible, to preserve it intact, and would leave nothing to produce the annual income contemplated by the testatrix, and referred to in the will as net proceeds, because, except a small number of live stock and her household furniture, the tract of land in question was all the estate the testatrix owned when she died, and, while it does not so affirmatively appear in the testimony, as her will was made and her death occurred in the same year, it is not probable that she owned any other real estate, or any other considerable amount of personal property at the time she made her will. Besides, if Miss Patten's intention was to devise substantially her entire estate in fee simple to her brothers, why did she make a will at all? They were her next of kin, and at her death would have taken the property by inheritance. The very fact that she made a will shows that she did not intend that they should have absolute title to the entire tract of land.

The next important question is, does the will vest title in George W. and Nathan Patten, or either of them, to any of the tract of land involved; or was it the testatrix's intention to provide for them a mere right of occupancy and use of her residence with its appurtenances, without any power in either to alienate it, or any right in their creditors to have it applied to the payment of their demands? After careful and mature consideration, our conclusion is, that the latter is its true import and meaning—that the intention was to create a spendthrift trust.

The following facts and circumstances point with great if not irresistible force to this conclusion: Both the brothers, George W. and Nathan, were irretrievably insolvent when the will was made, George W. owing $25,000 that he was unable to pay, and Nathan's financial condition being still worse. These facts were known to the testatrix; and it is in proof that she told the attorney who wrote the will that her brothers were hopelessly insolvent, and that George W. was addicted to the excessive use of liquor, was improvident, and could never clear himself of his debts. The value of Miss Patten's estate is not disclosed by the evidence; but the land in question—which comprises nearly all of the estate—was valued at $2000 when she acquired it in

1875, and it is not probable that, when the will was made, the value of her estate was anything like equal to the amount of George W. Patten's debts. Yet with all these facts before her she undertook by her will, as disclosed by its terms, to provide a means of support for her brother George, not temporarily, but during all the years he might live after her death. This is the general scheme, the leading idea and prominent feature, of the will. But how could this be accomplished if she bestowed the property upon him in full right of ownership? Such title would carry with it the right of waiting creditors to absorb the property in satisfaction of their demands, and thereby frustrate and nullify the very object intended to be accomplished. These considerations, and the fact that the will, by its terms, confers on George W. and Nathan Patten only the right to occupy and use the property during their lives, render it reasonably certain that it was the intention of the testatrix that the property designated for their use should remain intact and a part of her estate during their lives; that during that time it should not be sold by any one, nor for any purpose. Wales v. Bowdish, 61 Vt., 23.

And the same is true as to the net income of the balance of the estate, which the executor is required by the will to pay over to George W. Patten, and after his death, to Nathan Patten. Being intended for the support of those designated beneficiaries, whose financial conditions were known to the testatrix to be that of absolute and irretrievable insolvency, the reasonable and logical conclusion is that this, as well as the right to occupy and use the dwelling-house and its appurtenances, was intended as a personal benefaction, not to be diverted at the instance of creditors of the beneficiaries. Whether or not an excess of the fund referred to, the income over and above the necessities of the beneficiaries, could be reached by creditors, is not a question in this case, and is not decided, because no such excess was shown. It can not be successfully claimed that no disposition is made of the estate remaining on hand after the death of George W. and Nathan Patten. The will designates with sufficient certainty those who shall be entitled to such remainder. This disposes of the controlling question in the case.

There is no merit in appellees' motion, incorporated in their brief, to strike out appellants' brief and assignments of error. There being a statement of facts, and appellants having excepted to the judgment, it was not necessary for them to except to the court's conclusions of fact and law. Tudor v. Hodges, 71 Texas, 392.

Appellees, not having assigned as error the rulings of the court on the admissibility of evidence, are not entitled to have the rulings revised. However, the objection urged to the deed from Patten Bros. to Martha A. Patten, is untenable. Frost v. Wolf, 77 Texas, 455.

There was no error in holding that George M. Patten was the executor of the will of Martha A. Patten. The County Court of Hill County had jurisdiction to probate the will and declare him the exec-

utor; and whether or not its rulings were correct, and whether or not the executor has complied with the requirements of the will, are questions that can not be raised in this case.

After considering all the questions involved in this appeal, our conclusion is, that the appellees are not entitled to recover anything. Therefore, the judgment of the District Court will be reversed, and judgment here rendered that appellees take nothing, etc.

*Reversed and rendered.*

Delivered February 6, 1895.