Opinion of the Commission of Appeals answering the certified questions adopted and ordered certified.

**COGLEY et al. v. WELCH et al.**

No. 1407–5597.

Commission of Appeals of Texas, Section A.
Feb. 4, 1931.

Pope, Pope, Valdez & Pope, of Laredo, and Gaines, Gaines & Roberts, James A. Harley, and C. K. Quin, all of San Antonio, for plaintiffs.

Mann, Neel & Mann and Hamilton & Rector, all of Laredo, and Seale & Denman, of Nacogdoches, for defendants Farrell and others.

M. J. Raymond, of Laredo, for defendants unknown heirs of Thomas F. Farrell.

Dodson & Ezell, of San Antonio, for defendants Cogley and Urbahn.

CRITZ, J.

As it appears from the record in this case, Thos. F. Farrell died in Webb county, Tex., in 1900, leaving a written will which, omitting formal parts, is as follows:

"I, Thos. F. Farrell, of said State and Co. being of sound and disposing mind and memory, do hereby make and declare this my last will and testament, hereby revoking any and all wills and testaments heretofore made by me.

"Item 1. I hereby nominate and appoint M. T. Cogley and Albert Urbahn of said County, executors of this my last will and testa-

ment, and direct that no bond or other security be required of them as such executors, and I also direct that no other action shall be had in the probate or any other Court in relation to the settlement of my estate than the probating and recording of this will and the return of an inventory, appraisement and list of claims of my estate.

"Item 2. It is my will that all of my just debts and expenses of last sickness and funeral be promptly paid by my executors.

"Item 3. I give, devise and bequeath to Francisco Tijerina the tract of land situated in the Western Division of the City of Laredo, Webb County, Texas, known as Lot Five (5), in Block Two Hundred and Forty Nine (249), and also the sum of One Hundred Dollars in money; the said sum of money to be paid to him by my executors as soon as practicable after my decease.

"Item. 4. I give and bequeath to Geronimo Cruz seven hundred goats, and direct that my executors deliver said goats to him as soon as practicable after my decease.

"Item 5. I give and bequeath to Anacleto E. Vidaurri the sum of Five Hundred Dollars; to Rev. Father E. R. Chase the sum of One hundred dollars; to Joe Mudd the sum of fifty dollars; to Jose Sanchez the sum of fifty dollars; to Cyril Bolleter the sum of fifty dollars; to Ulmer Westrup the sum of fifty dollars; to Eduardo Muguerza the sum of fifty dollars; and to Alfredo Poggenpohl the sum of fifty dollars, all of which sums of money shall be paid by my executors as soon as practicable after my decease.

"Item 6. I give, devise and bequeath to my said executors M. T. Cogley and Albert Urbahn all the rest and residue of my estate, real, personal and mixed, of every kind and nature, to have and to hold and to manage and contrtol and dispose of the same in trust for the use and benefit of my brother John W. Farrell, in the manner following, viz:

"(1) I desire my executors to sell the remaining goats belonging to my estate after delivering to Geronimo Cruz the seven hundred head mentioned in Item 4 hereof, and also to sell any and all other live stock belonging to my estate, and to rent out the ranch lands until such time as said lands may be sold or otherwise disposed of as hereinafter provided.

"(2) My executors are hereby authorized to sell the ranch, lands and any other real or personal property belonging to my estate whenever they shall deem it to the best interest of the estate to make such sale or sales, with full authority to execute and deliver good and sufficient deeds of conveyance of any and all such property, and to loan out the proceeds of such sales as well as any other money on hand not herein otherwise disposed of, at interest upon good real estate security.

"(3) I direct that my said executors pay over to my brother John W. Farrell, monthly, the net revenues of my estate derived from rents and interest, after deducting taxes, insurance, cost of repairs and other expenses including the usual commissions.

"Item 7. At any time after five years after the date of my decease my executors are hereby authorized to convey and deliver to my said brother John W. Farrell in fee simple all property and assets then in their hands or under their control belonging to my estate; provided that in their opinion the said John W. Farrell shall then be capable of managing the same prudently and that it will then be to his interest to have control of the same, of which fact my said executors shall be the sole judges.

"Item 8. In case of the marriage of my said brother John W. Farrell at any time while my said executors are in charge of my estate, and he desires to occupy Lots six (6) and seven (7) in Block sixty two (62) and the improvements thereon in the Western Division of the said City of Laredo as his place of residence, and the same shall not have been previously sold, my executors shall permit him to so occupy the same free of rent or other charges or expenses so long as he shall desire to occupy the same.

"Item 9. In case of the death of my said brother John W. Farrell within five years after my decease, or at any time thereafter and before the conveyance and delivery to him of the property and assets of my estate by my said executors, it is then my will and I hereby direct that my executors shall then dispose of said property and assets as follows:

"(1) Give to Mercy Hospital of our Lady of Lourdes of Laredo, Texas, the sum of Three Hundred Dollars.

"(2) Give to the pastor of Saint Peter's Catholic Church of Laredo, Texas, the sum of One Thousand Dollars, the same to be expended by him within one year after he receives it for the benefit of said church, in paying indebtedness due upon said church or in improvements thereon.

"(3) Give to the pastor of San Agustin Catholic Cathedral of Laredo, Texas, the sum of One Thousand Dollars, the same to be expended by him within one year after he receives it for the benefit of said Cathedral in paying indebtedness due upon said Cathedral or in improvements thereon.

"(4) Invest or loan out or otherwise dispose the sum of Five Hundred Dollars in such manner that the annual revenue produced by the same shall be used in keeping in proper order and repair the graves of my mother, sister, brother and myself and other members of my family in the cemeteries of Laredo.

"(5) Hold the rest and residue of my estate subject to the order of my heirs at law according to the laws of descent and distribution of the State of Texas, and continue to

manage the same until such heirs shall request delivery and conveyance to them.

"Item 10. In case there shall not be sufficient money on hand with (which) to make the gifts and investments provided for in Item 9 of this will, my executors are hereby authorized to sell and convey sufficient real estate for such purpose.

"Item 11. In case of the death or removal from the State of Texas, of either of my said executors before the provisions of this will shall have been fully executed, the remaining executor is hereby fully authorized and empowered without bond and in the same manner to carry out and execute all the provisions of this will, including the power to sell and convey any and all real estate belonging to my estate.

"Witness my hand at Laredo, Texas, this 13th day of May, 1900.

"Thos. F. Farrell."

As shown by the will, M. T. Cogley and Albert Urbahn were named independent executors and constituted testamentary trustees. Under the terms of the will, the county court was to exercise no jurisdiction over the estate other than to probate the will, and have returned an inventory and appraisement of the estate, and list of claims.

The above will was legally probated in the county court of Webb county, Tex., within the time prescribed by law, and Cogley and Urbahn duly qualified as independent executors and accepted the trust therein created.

The will provides that the executors, after the administration directed therein, shall hold the residue of the estate subject to the order of the heirs at law of the testator and "continue to manage the same until such heirs shall request delivery and conveyance to them." As shown by the express terms of the will, this provision was to apply in the event a brother, John W. Farrell, for whom a trust estate was created by the will, should die without issue before the delivery of such estate to him.

It is shown that this brother of the testator, John W. Farrell, did so die in 1903, and after his death his widow prosecuted a suit against Cogley and Urbahn asserting ownership by inheritance from her deceased husband to this trust estate, which was denied by the trial and appellate courts.

It is further disclosed by the record that Cogley and Urbahn, acting as independent executors, have done and performed all of the things provided in the will to be done by them as executors, and are now holding as trustees about $50,000 in money belonging to the heirs at law of Thos. F. Farrell, deceased, under the residuary provisions of the will.

It is further shown that after final judgment in the suit filed by the widow of John W. Farrell, deceased, the executors conducted a very extensive search throughout Ireland, from where it was understood the parents of Thos. F. Farrell immigrated in an effort to find his heirs; but were never able to locate any such who were able to establish their heirship to the satisfaction of Cogley and Urbahn.

The record also discloses that when this suit was begun and tried in the county court of Webb county, Tex., there was then pending in the Forty-Ninth district court of such county, cause No. 2748, Thos. Farrell et al. v. M. T. Cogley et al. such suit being against Cogley and Urbahn as independent executors and trustees of the Thos. F. Farrell estate to establish in behalf of the plaintiffs in that suit, claiming to be heirs at law of the testator in the above will, title and possession of the residuary estate aforesaid. Some of the parties in this proceeding intervened in said cause No. 2748 above; also Cogley and Urbahn filed in said cause No. 2748, then pending in the district court, a cross-action impleading and having citation issued by publication for the unknown heirs of Thos. F. Farrell, deceased, and asking the district court in said cause to hear and determine to whom said estate should be delivered. It seems that the state also intervened in said cause No. 2748 and asked for escheat of the property to the state.

After all of these matters and things had happened and transpired, and while cause No. 2748 was pending, this proceeding was begun as an original action in the county court of Webb county, Tex., by Mrs. Eliza Rhea Welch et al. against Cogley and Urbahn. We are not able to exactly determine the intended nature of this suit as originally instituted, from the original petition, but from the prayer it appears to us that the relief prayed for is similar to a civil action in the county court, and this for more than $50,000 worth of property. The prayer contained in this petition is as follows:

"Wherefore, your applicants pray that citation issue to such executors as provided by law and upon hearing of this cause that your applicants be declared entitled to the partition and distribution of such estate according to their respective shares and that such estate be partitioned and distributed as in like case provided by law, and that your applicants have such other relief, general and special, as in law and equity they may be entitled to."

Cogley and Urbahn answered the suit in the county court by various pleas in abatement and to the jurisdiction, pleading the pendency of the district court case, and other pleas not necessary to here describe.

The next proceeding had in the county court of Webb county, in the above-mentioned cause there pending, was an amended petition

filed in said court and in said cause, by the original claimants, and some additional parties, for the first time directly invoking the jurisdiction of the county court under chapter 23, title 54, R. C. S. of Texas, 1925, articles 3590 to 3597, both inclusive. This amended petition was filed on January 23, 1926. The prayer contained in this amended petition is as follows:

"Wherefore, your petitioners pray that citation by publication be issued for the unknown heirs of Thomas F. Farrell, as required by law, and that upon a hearing hereof they be declared to be the heirs at law, under the Statute of Descent and Distribution of the State of Texas, of Thomas F. Farrell, deceased, and that their respective shares of interest in said Estate be established, and that by decree they be entitled to receive from the executors of said Estate, T. M. Cogley and Albert Urbahn, their respective shares of such estate, and for all other and further relief, either at law or in equity, to which they may be entitled."

There are certain assignments questioning the sufficiency of the citation by publication for unknown heirs which we do not discuss because the case must be dismissed on other issues.

Cogley and Urbahn again filed their pleas in abatement and to the jurisdiction, and other pleas to this amended petition. The county court overruled these pleas in abatement and to the jurisdiction, and the other pleas, and made certain other orders, and after a final trial rendered a judgment declaring the heirs of Thos. F. Farrell, deceased.

The case was appealed to the district court, where Cogley and Urbahn again urged their said pleas in abatement, and to the jurisdiction, and their other pleas, which were again overruled, and the district court tried the cause and entered a final judgment declaring persons other and different from those declared by the county court to be the heirs at law of Thos. F. Farrell, deceased. The case was appealed to the Court of Civil Appeals, where the many and various questions involved were properly presented. The Court of Civil Appeals, however, affirmed the judgment of the district court without passing directly on any of the issues presented. 20 S. W.(2d) 244. The case is in the Supreme Court on two applications for writs of error, one filed by Cogley and Urbahn, and one by Eliza Rhea Welch, et al.

The various assignments in the two applications present many questions of law to the Supreme Court, as is evident from the statement we have made. As above stated, the Court of Civil Appeals has not seen fit to pass directly on any of these assignments, but by affirming the judgment of the district court, has, as a matter of law, overruled them all. We do not ourselves pass on all assignments, but content ourselves with discussing such of them as we deem controlling of the litigation.

 As stated above, this case was begun in the county court. It was appealed from that court to the district court. Such being the case, the district court only acquired such jurisdiction on appeal as the county court had as a court of original jurisdiction.

When the case was tried in the county court, that court was attempting to exercise jurisdiction under and by virtue of chapter 23, title 54, R. C. S. of Texas, articles 3590 to 3597, both inclusive. Article 3590 defines the action, and prescribes under what circumstances it may be maintained. The article reads as follows:

"When a person dies, intestate, owning or entitled to real or personal property in Texas, and there shall have been no administration in this State upon his estate, and when there has been a will probated in this State or elsewhere, or an administration in this State upon the estate of such decedent, and any real or personal property in this State has been omitted from such will or from such administration, or no final disposition thereof has been made in such administration, the county court of the county in which such proceedings were last pending, or in the event, no will of such decedent has been admitted to probate in this State, and no administration has been granted in this State upon the estate of such decedent, then the county court of the county in which any of the real property belonging to such estate is situated, or, if there be no such real property, then of the county in which any personal property belonging to such estate may be found, may determine and declare in the manner hereinafter provided in this chapter, who are the heirs and only heirs of such decedent, and their respective shares and interests, under the laws of this State, in the estate of such decedent, and actions therefor shall be known as actions to declare heirship."

An examination of the article quoted discloses that it may be proceeded under, when a person dies intestate, owning property, real or personal, in Texas, and there has been no administration in this state, upon his estate, and when there has been a will probated in this state or elsewhere, or an administration in this state upon the estate of such decedent, and any real or personal property in this state has been omitted from such will or from such administration, or no final disposition thereof has been made in such administration. None of the things required to exist in order to authorize a proceeding under this statute exist in the instant proceeding. Thos. F. Farrell, whose estate is involved, did not die intestate but testate. There has been an

administration in this state upon his estate, and all property, real and personal, owned by him was included in said will and in such administration and finally disposed of thereby. Under such a record there is absolutely no authority in the act in question authorizing the county court to exercise jurisdiction to declare heirship in the premises. Of course, the county court being without jurisdiction in the premises, the district court was also lacking in jurisdiction, as it was only an appellate court in this instance.

█ Under the express terms of the will of Thos. F. Farrell, deceased, Cogley and Urbahn, the two executors therein named, and who both duly qualified, were intended by the testator both has executors and testamentary trustees, and under the terms and conditions of the will they occupied this dual position. They were first executors, and after the discharge of all duties as executors, then they were and are testamentary trustees to carry out the trust created by the will. An examination of the will will plainly disclose the dual position of the two persons named. Item 6 thereof expressly conveys the legal title to the residuary estate to Cogley and Urbahn, *to have and to hold, and to manage and control, and dispose of the same in trust for the use and benefit of John W. Farrell.* Furthermore, the duties imposed on Cogley and Urbahn with reference to the residuary estate were primarily such as are usually imposed upon testamentary trustees. At the time the instant proceedings were begun in the county court all claims against the estate of Thos. F. Farrell, deceased, had long since been fully discharged, and all provisions of the will had been fully performed, except Cogley and Urbahn were holding the residuary estate, which had been reduced to cash, as testamentary trustees for the benefit of the lawful heirs of the testator. In other words, after Cogley and Urbahn had discharged all of the duties incumbered upon them as independent executors under the will the residuary estate ceased to be, in the technical sense of the word, the estate of the decedent, and became an estate in trust, and the executors being the trustees thereof held the same and the legal title thereto as trustees and not as executors. McClelland v. McClelland, 46 Tex. Civ. App. 26, 101 S. W. 1171 (Writ Ref.). Such being the condition of the record, the district court is the only court which has jurisdiction to hear and determine the ownership of the fund which amounts to $50,000, or more. McClelland v. McClelland, supra.

As disclosed by our statement above, at the time this suit was filed and tried in the county court, a suit was pending in the district court for a partition and distribution of this trust fund. The district court certainly had full power and jurisdiction over all parties, proper and necessary for the partition of this property; it had jurisdiction of the subject-matter of the suit; it had jurisdiction to determine the heirs of Thos. F. Farrell, deceased, and to do any and all things proper and necessary in the premises to partition this fund, and ascertain its lawful owners. Some of the parties to the instant proceeding were already parties to the district court case, and all parties proper and necessary could have been subjected to the jurisdiction of the district court.

The contention is made that chapter 23 of title 54, R. C. S. of Texas 1925, articles 3590 to 3597, inclusive, are unconstitutional and void, as in contravention of section 16, art. 5, of our State Constitution. In this connection it is contended that the section of the Constitution named defines and limits the jurisdiction of the probate court, and that the language thereof, by necessary implication, withholds from the jurisdiction of the probate court any action or proceeding with reference to adjudicating heirs, which is not in aid of, or ancillary to either the actual or potential administration of an estate. We decline to pass on this question for the reason that we have held the act in question, even if constitutional, not to apply to this case. Such being our holding, we think that any views we might express as to the constitutionality or unconstitutionality of the act would be dicta.

There are many other assignments presented by this record which would result in a reversal of this case, but the ones discussed by us finally determine the litigation so far as this proceeding is concerned.

We recommend that the judgments of the Court of Civil Appeals and of the district court be both reversed, and the cause dismissed.

GREENWOOD and PIERSON, JJ.

Judgments of the district court and Court of Civil Appeals reversed, and cause dismissed.

CURETON, C. J., not sitting.