**BELL et al. v. BOARD OF DIRECTORS OF PYTHIAN WIDOWS AND ORPHANS HOME et al.**

No. 2836.

Court of Civil Appeals of Texas.
Tenth District. Waco.

March 3, 1949.

Rehearing Denied March 31, 1949.

C. S. Farmer, Bryan, Maxwell & Bryan and Scott, Wilson & Cureton, all of Waco, for appellants.

L. M. Stinnett and R. W. Brown, both of Gatesville, M. G. Cox, of Cameron, Samuels, Brown, Herman & Scott, of Fort Worth, and J. Albert Dickie, of Gatesville, for appellees.

TIREY, Justice.

The Board of Directors of the Pythian Widows and Orphans Home brought this suit to construe the will of John Russell Curtis, deceased, to remove Miss Kate Bell as testamentary trustee, to set aside a conveyance by Miss Bell to J. T. Murphy of the east one-half of Lot 4 in Block 7 in the City of Gatesville, and to set aside a transfer of thirty-six shares of common stock of the Guaranty Bank & Trust Company of Gatesville, transferred by her to Aven, and to appoint a substitute trustee.

We quote the pertinent parts of the will:

"Third: All the rest and residue of my estate, whether real, personal or mixed property, including life insurance, liberty bonds, bank stock or other stocks, monies, notes, and in fact everything that I own or may be entitled to at the time of my death, not required to pay my debts and the above legacy, I direct to be delivered and turned over to Miss Mollie Bell and Miss Kate Bell (the sisters of my beloved deceased wife, Lee Bell Curtis), jointly to control, manage, use and dispose of for the following uses, trusts, and benefits, to-wit: They may use so much of said property and its proceeds (including my home) as they may need or feel disposed to for their own personal use and benefit, for their own support, maintenance and pleasure, but without mingling my funds or property with their own, or making a gift of more than a nominal amount to any person or institution, preserving the identity of my estate, and at the death of either of them, the possession, management, use, control and disposition of said property to pass to the survivor, and at the death of the survivor, I direct that my executor hereinafter named, or that may be hereafter appointed by the proper judicial authority, shall convert all of said property that may remain unexpended by them for the above purposes, into money or its equivalent in interest bearing securities, and pay and transfer the same over to the Grand Lodge Knights of Pythias, of the State of Texas, or such Board of Directors, Trustees, or other board or corporate body connected with said Order of Knights of Pythias as may have control of the Pythian Widows and Orphans Home maintained in Texas, by said order, to be used by said Grand Lodge, or said Board of Trustees, directors, or such other corporate body controlling said Pythian Widows and Orphans Home in Texas, and its finances, for the maintenance, support, education and general benefit of the Widows and Orphan Children of members of said order, entitled under the constitution, rules, regulations and laws of this order to enter said home, and residing therein.

"It is my will and desire that the said Miss Mollie Bell and Miss Kate Bell have full possession, management, control and charge of my estate, jointly so long as they shall both live, and the survivor after the death of either, without being amenable to any person for the manner in which they may manage said estate, and without accountability to anyone, but that they keep the funds and property belonging to my estate separate from their own, and if they do keep my property and estate intact as required hereby, I direct that my executor (or any beneficiary hereunder) shall have no right to any property not standing in the name of my estate at the death of the survivor of them, nor shall any inquiry be made into the manner in which they may have discharged this trust, so that there may be no controversy between my executor or beneficiaries and the heirs or legal representatives of either of them after their death.

"It is my purpose and desire that the said Miss Mollie Bell and Miss Kate Bell may feel free to use so much of my estate for their own support and pleasure as they may have use for, regardless of their financial ability to support themselves, in order that they may be assured of a support and living in the event their own property for any reason may prove inadequate for the purposes.

"I hereby nominate and appoint Miss Mollie Bell, Miss Kate Bell and my friend, John D. Brown, Jr., joint executrices and executor of this my will, or any of them that may be willing or able to act in the capacity may be appointed in the event any of them should be unwilling or unable to do so, or should not survive me, and I direct that on the death of any of them, the others continue to act, and further, that no bond be required of any of them, and that they act independent of the court in the execution of the trusts herein created and in the administration of my estate.

"I direct that should the said John D. Brown, Jr., die before I do, or be unwilling or unable to act as executor, or if he should die or resign as executor before the final disposition of my estate, that the court having jurisdiction over my estate,

appoint a suitable person, being a Knight of Pythias in good standing and not otherwise interested in my estate, to act in his stead, who shall give bond in the manner required by law, and be amenable to the orders of said court, and I suggest that the court be guided in the selection of such person by the advice and nomination of the Chancellor, Vice-Chancellor and Prelate of Royal Lodge No. 84, Knights of Pythias, if such lodge be then in existence, if not, of the same officers of such other lodge of said order as may then have its domicile in Gatesville, and if there be no lodge of said order in Gatesville, then of the three members, oldest in years of membership in such order, in good standing, then living in Gatesville, who will consent to nominate such executor.

"My purpose in making the above suggestion is to assure the appointment of some one who will have the interest of my beneficiaries at heart, and will use due diligence to see that my intentions as expressed in this will are carried out.

"I authorize Miss Mollie Bell and Miss Kate Bell, jointly, and the survivor of them after the death of either, and my executor, after the death of both of them, to sell and dispose of my property belonging to my estate for the purpose of carrying out the bequests herein made, and for the purpose of reinvesting the funds derived from such sale, at any time they may deem a change in my investments advisable or to the best interest of my estate."

The jury in its verdict found in effect (1 and 2) that Miss Bell was induced to execute the deed to Murphy by reason of the undue influence exercised upon her by Aven, and that he was acting as the agent of Murphy in procuring the execution of the deed; and (3) that Miss Bell transferred the stock in the bank to Aven as a result of undue influence exercised upon her by Aven. Miss Bell seasonably presented her motion for judgment non obstante veredicto. This motion was adopted by Murphy. The defendant Aven presented his motion for judgment non obstante veredicto and these motions were overruled. Defendant J. D. Brown, Jr., filed his motion for judgment on the verdict of the jury and for additional findings by the court. This motion was granted in part and denied in part. We quote in part the findings of the court recited in the judgment:

"The court finds in accordance with verdict of the jury that the deed executed by Miss Kate Bell as independent executrix of the estate of J. R. Curtis, deceased, conveying the East one-half of Lot 4 in Block 7 as shown by the plat of the City of Gatesville, which deed is of record in Vol. 159, page 7 of the Deed Records of Coryell County, Texas was obtained by undue influence of M. G. Aven on Miss Kate Bell.

"The court further finds, in accordance with the verdict of the jury, that M. G. Aven also acted as the agent of J. T. Murphy in obtaining the execution of said deed by Miss Kate Bell.

"The Court further finds that the market value of the East half of Lot 4, Block 7 as shown by the plat of the City of Gatesville at the time of the execution of said deed was at least $1000.00 more than the $6500.00 paid by J. T. Murphy for said property. The court further finds that the $6500.00 paid Miss Kate Bell was mingled with her own personal funds contrary to the terms of the will.

"The court further finds that the difference between the market value of said property and the amount paid for said property constituted a gift by Miss Kate Bell of more than a nominal amount in violation of the terms of the J. R. Curtis will.

"The court further finds that Miss Kate Bell executed said deed without the joinder of J. D. Brown, Jr., executor under the will of J. R. Curtis, deceased.

"The court further finds by reason of the above facts that the deed to J. T. Murphy is void and should be canceled and held for naught. * * *

"The court further finds, in accordance with the verdict of the jury that the transfer of the common stock in the Guaranty Bank and Trust Company by Miss Kate Bell to M. G. Aven was executed while Miss Kate Bell was under the undue influence of M. G. Aven.

"The court further finds that the market value of said 36 shares of stock at the

time and place of the transfer of same on or about May 1, 1947 was worth at least $5000.00 more than the $3600.00 paid by M. G. Aven plus the dividends that may accrue on said stock during the life of Miss Kate Bell. The court further finds that the $3600.00 paid Miss Kate Bell was mingled with her own personal funds contrary to the terms of said will.

"The court further finds that the difference between the market value of said stock and the amount paid for said stock by M. G. Aven constituted a gift of more than a nominal amount in violation of the provisions of the J. R. Curtis will.

"The court further finds that Miss Kate Bell executed said stock transfer without the joinder of J. D. Brown, Jr., one of the executors under the J. R. Curtis will.

"The court further finds that the transfer of said 36 shares of stock in the Guaranty Bank & Trust Company by Miss Kate Bell to M. G. Aven belonging to the estate of J. R. Curtis, deceased, is void and should be canceled. * * *

"The court further finds that Miss Mollie Bell and Miss Kate Bell and J. D. Brown, Jr., were appointed independent executrices and independent executor under the will of J. R. Curtis, deceased, and that they qualified as such on the probate of said will.

"The court further finds that they acted jointly in the administration of said estate until the death of Miss Mollie Bell about 1942.

"The court further finds that after the death of Miss Mollie Bell that Miss Kate Bell and J. D. Brown, Jr., acted jointly in the administration of said estate until about March, 1947, when Miss Kate Bell, without the joinder of J. D. Brown, Jr., executed the deed to J. T. Murphy and the stock transfer to M. G. Aven, while under the undue influence of M. G. Aven.

"The court further finds that at the time of the trial of this cause that Miss Kate Bell was 77 years of age, that she was practically blind and unable to see figures or read ordinary writing usually used in business transactions and by reason of her physical and mental infirmities and the undue influence exerted on her she is unable to act as executrix under the will of J. R. Curtis, deceased, or to exercise any managerial authority over the property belonging to said estate.

"The court further finds that Miss Kate Bell should be removed as executrix of the estate of J. R. Curtis, deceased, and should be denied the right to exercise any managerial authority over said estate without depriving her of the beneficial use of the property of said estate for her own personal use and benefit and for her support, maintenance and pleasure. * * *"

On the above findings the decree (a) canceled the deed from Miss Bell to Murphy; (b) canceled the transfer of the bank stock from Miss Bell to Aven and decreed that such property belonged to the J. R. Curtis estate; and (c) removed Miss Bell as independent executrix of the estate without depriving her of the use of the property belonging to the estate and making expenditures for her personal use and benefit and for her support, maintenance and pleasure.

The court further found that said Brown had been the active executor under the will in the management of said estate and since he qualified in 1935 to March, 1947, he had increased the assets of said estate from about $49,000.00 to about $75,000.00.

The court further found that the will, when considered as a whole, made Miss Mollie Bell, Miss Kate Bell and John D. Brown, Jr., joint executrices and executor.

"But if the court be in error in such construction of said will, and that the proper construction of said will should be that J. D. Brown, Jr., was to remain an inactive executor or trustee so long as Mollie Bell or Kate Bell was living and willing and able to act, then the court finds that Miss Mollie Bell died in 1942, and that Miss Kate Bell is unable to act as such executrix and trustee, for the reasons herein found by the court, and she having been removed from such office by the court, then the question is moot as to whether Miss Mollie Bell and Miss Kate Bell or the survivor could carry out the terms of said will without the joinder of J. D. Brown, Jr., by reason of one being dead and the other being unable to act.

"The court further finds that there are no instruments before the court where J. D.

Brown, Jr., did not join in their execution and no acts of Miss Mollie Bell or Miss Kate Bell, acting jointly or separately, but without the joinder of J. D. Brown, Jr., in the administration of the estate of J. R. Curtis, deceased, that are before the court for consideration except the deed to J. T. Murphy and the transfer of the stock in the Guaranty Bank & Trust Co. to M. G. Aven, and the court has found that both of said transfers were made by Miss Kate Bell acting alone, at a time when she was under undue influence, and the question is moot as to whether said transfers would have been valid, had she not been under undue influence at the time of the execution of same.

"The court further finds that the prayer of the defendant Miss Kate Bell and the defendant M. G. Aven and the intervener J. T. Murphy for a construction of said will and a declaratory judgment construing said will as giving Miss Mollie Bell and Miss Kate Bell or the survivor the power to sell said property without the joinder of J. D. Brown, Jr., be in all things denied, for the reason that Miss Mollie Bell is dead and Miss Kate Bell is unable to act because of her age and mental and physical infirmities and the undue influence exerted on her, and there are no questions of her or their past acts that are dependent upon the construction of that part of the will and the facts in evidence are conclusive that the question will not appear in the future and such question is moot.

"The court further finds that if any office of trustee is created in said will, separate and independent from the office of executrices and executor, then the court finds that the above quoted paragraph of said will taken into consideration with the will as a whole would appoint the said J. D. Brown, Jr., as such trustee, and he would be the sole trustee for the reason that the court has found that Miss Mollie Bell is dead and Miss Kate Bell is unable to act as herein found by the court.

"It further appearing to the court that J. D. Brown, Jr., was named and appointed under the will of J. R. Curtis, deceased, as independent executor thereof, and fully authorized and empowered to carry out the terms of said will after the death of Miss Mollie Bell, and Miss Kate Bell, or in the event that they are unwilling to act or unable to act, and the court having found that Miss Mollie Bell is dead, and Miss Kate Bell is unable to act in carrying out the will and J. D. Brown, Jr., is authorized by the terms of said will to carry out the provisions thereof and to appoint a trustee or receiver to carry out the terms of said will would be to substitute the order of the court for the will of the testator, and no necessity exists for such appointment."

On the above findings the court denied plaintiff's prayer for the appointment of a trustee or receiver.

The court further found in effect that there was nothing in the will to prevent a court of equity from restoring the assets of said estate that had been obtained from Miss Kate Bell by the exercise of undue influence upon her, nor would it prevent him from removing Miss Bell from the office of independent executrix and trustee since the court was of the opinion and found that the property of said estate would be wasted and lost if he did not do so.

" * * * The court further finds that the will of J. R. Curtis provided that all of the property of the estate of J. R. Curtis be placed at the disposal of Miss Mollie Bell and Miss Kate Bell for their own personal use and benefit, for their support, maintenance and pleasure. That such provisions cover not only the income but also the corpus of said estate, and on the death of both of them the property that may remain, unexpended by them for the above purposes is to be paid and transferred to the Pythian Widows and Orphans Home.

"The court further finds that Miss Mollie Bell and Miss Kate Bell are given the free use of the estate of J. R. Curtis for their own support and pleasure, regardless of their financial ability to support themselves.

"The court further finds that J. D. Brown, Jr., in his administration of said estate placed at the disposal of Miss Mollie Bell and Miss Kate Bell, during the lifetime of Miss Mollie Bell and at the disposal of Miss Kate Bell after the death of Miss Bell, the free use of the property of said estate, and has at all times encouraged their free use of the funds belonging to said estate, and has at all times maintained funds be-

longing to the J. R. Curtis estate available for their support, maintenance, and pleasure, regardless of their financial ability to support themselves, and Miss Kate Bell is entitled to have said funds and property made available to her for such purposes as long as she lives."

On the foregoing findings the court decreed that defendant J. D. Brown, Jr., pay to J. T. Murphy, intervener, the sum of $6500.00, without interest, out of the estate of J. R. Curtis, deceased, and also directed said Brown to pay to defendant M. G. Aven the sum of $3600.00, without interest, out of funds belonging to the J. R. Curtis estate.

The court also found that the plaintiffs have no present interest in the property of the J. R. Curtis estate but they are entitled to all of the property belonging to said estate that may remain unexpended after the death of Miss Kate Bell, and also found that plaintiffs had prosecuted this suit for the preservation of said estate and for the cancellation of the deed to Murphy and for the cancellation of the stock transfer to Aven, and for the construction of the will of J. R. Curtis, deceased. The court also found that some provisions of the will are ambiguous and the construction thereof is for the benefit of the estate and independent executor as well as the plaintiffs. On this finding the court assessed one-half of the costs against J. D. Brown, Jr., as independent executor and one-half against defendants Aven and Murphy. The judgment further decreed that J. D. Brown, Jr., independent executor of the will of J. R. Curtis, deceased, have his writ of possession against defendants, Miss Kate Bell, and M. G. Aven, and intervener, J. T. Murphy for the title and possession of said real estate and for the stock certificates covering the 36 shares of stock in the Guaranty Bank & Trust Company and all bonds in the hands of said parties payable to or owned by the estate of J. R. Curtis, deceased.

Appellants' point No. 1 is: "The only reasonable construction of the Curtis will is that the duties of the executor and executrices ceased when the debts were paid and the property delivered to Mollie Bell and Kate Bell, and that the executor, John D. Brown, Jr., was not a trustee during the lifetime of Mollie Bell and Kate

Bell and the survivor of them; and that the executor, John D. Brown, Jr., had no power or authority to function in any capacity after the property was so delivered to the Bells until the death of the survivor, when as 'executor' he was to deliver the remaining property to the Board of Directors of the Pythian Orphans and Widows Home." We overrule this contention.

It is the court's duty to arrive at the intention of the testator. The rule in Texas is: "In construing the will, all of its provisions should be looked to, for the purpose of ascertaining what the real intention of the (testator) was; and, if this can be ascertained from the language of the instrument, then any particular paragraph of the will which, [when] considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument." McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412, 413. See also Norton v. Smith, Tex.Civ.App., 227 S.W. 542; Darragh v. Barmore, Tex.Com.App., 242 S.W. 714; Arrington v. McDaniel, Tex.Com. App., 14 S.W.2d 1009; Colton v. Colton, 127 U.S. 300, 8 S.Ct. 1164, 1168, 32 L.Ed. 138. In Colton v. Colton, supra, the court said: "[Our courts must] look upon the intention of the testator as a polar star to direct them in the construction of wills." If there is ambiguity in the will, then " 'It is competent to admit parol evidence * * * to explain a will * * * by showing the situation of the testator in relation to persons and things around him; * * * in order that his will may be read in the light of the circumstances in which he was placed at the time of making it. * * * The intention and meaning can best be ascertained by the court putting itself, as far as may be, in the place of the testator and reading the will in the light of his environments at the time the will was made.' " Jackson v. Templin, Tex.Com.App., 66 S.W. 2d 666, point page 668, 92 A.L.R. 873.

J. R. Curtis, the testator, was preceded in death by a son (his only child) and by his wife. The will provided for a $2000.00 legacy to the testator's sister, but this legacy lapsed because the sister failed to survive. Misses Mollie and Kate Bell had a sizable estate and they had lived in the home with

the testator after his wife's death. The testator, at the time of making his will and for many years prior thereto, was a very active member of the Knights of Pythias lodge at Gatesville, Texas. John D. Brown, Jr., the executor named in the will, had been an attorney for some thirty years and an active member of the Knights of Pythias lodge and was associated with the testator in lodge affairs and was his legal adviser, and he prepared testator's will in 1921. Testator died in 1935. He made his wife's two sisters, Miss Mollie Bell and Miss Kate Bell, and the Board of Directors of the Pythian Widows and Orphans Home the beneficiaries under his will. He appointed Miss Mollie and Miss Kate Bell and John D. Brown, Jr., executrices and executor of his will. Miss Mollie died after the probate of the will but before suit was filed. We think it is significant that the will provided that in event John D. Brown, Jr., should be unwilling or unable to serve as executor, that a member of the Knights of Pythias lodge be appointed in his place and the will specified the manner in which such appointment should be made. The testator gave as his reason for so doing: "to assure the appointment of someone who will have the interest of my beneficiaries at heart, and will use diligence to see that my intentions as expressed in this will are carried out." We likewise think it is significant that the will does not give, devise or bequeath the testator's property to anyone, but provides only that Miss Mollie and Miss Kate shall have the use of the property and at their death his executor is to reduce the same to cash and pay and transfer it to the Board of Directors of the Pythian Widows and Orphans Home. It is equally significant that the testator limited and restricted the use of the property by the Misses Bell "for their own personal use, support, maintenance and pleasure." These specific provisions as to the use of the property are set out in the will.

Looking at the conditions surrounding the testator at the time of the execution of the will as disclosed by the undisputed record, and keeping in mind the express provisions of the will in its entirety, we have no difficulty in reaching the conclusion that the will created a trust estate (only) for the use and benefit of the Misses Bell, limited by the express provisions of the will, with remainder to be reduced to cash and paid over to the Pythian Home. Since the will did not give or bequeath or devise the property to anyone but created a trust for the Misses Bell with limited and restricted uses with remainder to be reduced to cash and paid over to the Pythian Home, its provisions bring it within the well established rule in Texas that "where a will expressly or by necessary implication creates certain trusts, and imposes upon the executor duties which are usually performed by a trustee, he * * * will take such interest or title in the property as is requisite, although the will does not specifically designate him as trustee, nor expressly bequeath or devise the property to him in trust." McHatton's Estate v. Peale's Estate, Tex.Civ.App., 248 S.W. 103, 105, points 4 and 5 (writ ref.), citing: Patten v. Herring, 9 Tex.Civ.App., 640, 29 S.W. 388; Lane v. Miller & Vidor Lumber Co., Tex. Civ.App., 176 S.W. 100; Dulin v. Moore, 96 Tex. 135, 70 S.W. 742. See also Cogley v. Welch, Tex.Com.App., 34 S.W.2d 849. That is the exact situation here. The will does not give or devise property to anyone but gives the use only for a specified period of time, and restricts that use, and this in itself creates the trust.

Moreover, the will, in appointing the Misses Bell as executrices and J. D. Brown, Jr., as executor, did expressly provide that if any of the named executrices or executor was unable or unwilling to act that the other continue to act, and that "they act independent of the court in the execution of the trust herein created and in the administration of my estate." So we think that the appellants' position, wherein they state that Brown, the executor, "had no power or authority to function in any capacity after the property was so delivered to the Bells until the death of the survivor, when as 'executor' he was to deliver the remaining property to the Board of Directors of the Pythian Widows and Orphans Home," has no support in the will itself, but on the other hand is in irreconcilable conflict with the intention of the testator as disclosed by the provisions of the will. It is obvious from the will in its entirety

that it was the testator's intention that J. D. Brown, Jr., should continue to discharge the duties imposed upon him by the terms of the will so long as he was able to do so or until he refused to do so. Otherwise the testator would not have provided in his will: "I direct that should the said John D. Brown, Jr., die before I do, or be unwilling or unable to act as executor, or if he should die or resign as executor before the final disposition of my estate, that the court having jurisdiction over my estate, appoint a suitable person, being a Knight of Pythias in good standing and not otherwise interested in my estate, to act in his stead, who shall give bond in the manner required by law, * * * etc." It is significant that the appointment of John D. Brown, Jr., as executor and his willingness to accept the duties imposed upon him by such appointment and acceptance is not contingent upon whether either of the Misses Bell were able or refused to qualify as executrix, nor was the appointment of someone to succeed John D. Brown, Jr., dependent upon whether either of the Misses Bell failed or refused to qualify.

It follows that we think there is no merit in appellants' contention that the will vested in Mollie Bell and Kate Bell and the survivor of them a legal estate with a limited or restricted power to convey the fee simple title to any or all properties of the Curtis estate. We find no language in the will on which such assumption can be predicated, but on the other hand we think the provisions of the will show that such was not the intention of the testator, and appellants' contention in this behalf is overruled.

Nor do we think there is any merit in appellants' third conetntion, wherein they say that if the court construes the will to create a trust estate, then in such event that "Mollie Bell and Kate Bell and the survivor of them (Kate Bell) were and is the sole trustee and sole beneficiary of a life estate—holding the legal title to the life estate as trustee and the equitable or beneficial life as cestui—and by law the two estates merged and Kate Bell now holds a legal life estate free of the trust, and the trial court erred in holding otherwise." It is clear to us that appellants' position in this

respect assumes a legal conclusion without any factual basis and such position is expressly precluded by the very terms of the will and this contention falls of its own weight. It is clear to us that it was the intention of the testator that after J. D. Brown, Jr., had performed his duties as executor that he would continue to hold title to the property as trustee and that such trusteeship would continue until the death of the Misses Bell, and that after their death Brown would wind up the estate of the testator and deliver the property to the Pythian Home, as provided in the will. Viewing the will in its entirety, we think the provisions preclude the idea that there was to be any hiatus in the duties of Brown so long as he was able to discharge the duties imposed upon him and so long as he was willing to assume such responsibility. Nor did the testator intend that Brown would stand idly by and permit either of the Misses Bell to dispose of the estate under undue influence and to the detriment of the Pythian Home and thereby defeat the ultimate purpose of the testator. We therefore overrule Point No. 4.

Appellants' fifth point is: "The trial court erred in finding that Kate Bell gave away property belonging to the Curtis estate, in violation of restrictions against alienation—there being no single issue submitted to the jury on this ground, and there being no evidence of an intention to make a gift on the part of Kate Bell, or of the other elements constituting a gift." We overrule this contention.

The court found in effect that the sale of the land and the sale of the bank stock constituted a gift of more than a nominal amount, in violation of the terms of the will. These findings were made by the court as additional findings and were not the controlling issues in the case. This suit was grounded upon the allegation that Aven and Murphy had obtained the property in question by reason of the undue influence practiced upon Miss Kate Bell. Plaintiffs' suit for the cancellation of the deed to the real estate and for cancellation of the stock certificate transferring the bank stock and to remove Miss Kate Bell as testamentary trustee invoked the equity jurisdiction of the court

and characterized the proceeding as a suit in equity, so when the jury found in its verdict that Aven and Murphy had obtained instruments of title to the respective properties by reason of the undue influence exerted upon Miss Kate Bell, they stood before the court "barefooted" to be dealt with according to the equity powers of said court. And " 'the governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in one suit the rights and duties of all the parties which really grow out of or are connected with the subject-matter of that suit. * * *'" Stewart v. Miller, Tex. Civ.App., 271 S.W. 311, point pages 319–320 (writ ref.). It follows that we are of the opinion that the findings made by the trial court are ancillary to the controlling issues found by the jury in this suit and that the trial court has made these additional findings to support the decree entered. See Rule 279, Texas Rules of Civil Procedure. We are in accord with the additional findings made by the trial court.

Finding no reversible error, the judgment of the trial court is affirmed.