DAN FRISBY ET AL. V. WM. WITHERS.

(Case No. 1760.)

1. COLLATERAL ATTACK — JUDGMENT.— A judgment, though rendered in pursuance of a parol agreement of compromise, by which one party was to obtain the judgment and was afterwards to convey a portion of the land to those against whom it was rendered, cannot be set up in estoppel by one claiming under the judgment against those who set up the parol agreement, claiming in privity with the adverse party in an independent proceeding. The judgment was not void, and could only be attacked by a direct proceeding begun for that purpose.

2. WILL — CONSTRUCTION.— A will appointed executors and contained a request that they should serve until the testator's son became twenty-one years old. *Held,* that such a clause cannot be construed into an appointment of the son as executor when he should become twenty-one years old.

3. ADMINISTRATOR WITH THE WILL ANNEXED.— On the death or resignation of the executors named in a will, when an administrator *de bonis non* with the will annexed is appointed, he may administer the estate in accordance with the will, under orders of the proper court, but cannot exercise any of the discretionary powers conferred by the will on the executors.

4. DEED — WILL.— A will was probated in 1854; executors acted under it until 1830, and in 1871 an administrator with the will annexed joined in a deed with the surviving widow of the deceased, in a conveyance to one of the heirs of land belonging to the estate in satisfaction of a debt due from the testator, the deed reciting that it was made " by virtue of authority con-

tained in the will." No order of court was shown. In a suit begun in 1881 by those claiming under the deed, *held:*

(1) While the administrator, as such, had no authority to make such conveyance, yet both he and the surviving wife having an interest in the land, which it must be presumed was community property, the deed *prima facie* passed the title.

(2) It conveyed at least the interest in the land of the administrator, who was a distributee under the will, and of the widow, and this interest was sufficient to maintain an action for the land.

(3) Though the land was located in Texas, no administration ever having been granted in this state, it will be presumed after so great a lapse of time that no necessity for it existed.

5. GRANT — DESCRIPTION.— Whether a grant is so defective in description of the land as to make it void for this reason may, in a given case, be matter of law, to be determined by the court, while in another case it would be matter of description for the jury.

6. SAME.— Where a grant called for the falls by a river, and for the corner of another grant, without finding one of which the grant could not be located, but either being found, it could then be identified by the other calls, its identification is a question of fact for the jury.

7. CHARGE OF COURT.— A charge of the court which tends to induce belief that facts recited in it are sufficient to authorize a conclusion which the law does not attach to them, is error. Emphasizing, by repetition, an idea already conveyed in a charge is also error, and may be as hurtful as a charge on the weight of evidence.

8. POSSESSION — LIMITATION.— One in actual possession of land under an older grant, which conflicts with a junior grant, has constructive possession of all the land in conflict, except such as is in the actual possession of one claiming under the junior title.

APPEAL from Trinity. Tried below before the Hon. A. T. McKenney, special judge.

Suit brought September 21, 1883, by Wm. Withers to recover the Amos Donovan league of land. Plaintiff alleged title by regular conveyances from Donovan and also by limitation; and as against defendants Frisby and Gibson, he set up a former judgment.

The defendants, on October 28, 1881, pleaded not guilty. Subsequently, defendants Frisby, Gibson, Meekins and Doughty filed first amended original answers, in which they respectively set up claim to several portions of the league, which portions were on a conflict between the Donovan and Ortega grants, and they pleaded not guilty; Frisby and Gibson set up facts in avoidance of the alleged judgment against them.

Verdict and judgment for plaintiff for the league sued for.

The court charged that the plaintiff had shown a legal title to the Donovan league, and the issues of fact submitted related to the identification of the Ortega grant, which was older than the Donovan, and plaintiff's claim of limitation.

Appellee alleged as an estoppel against Frisby and Gibson a judgment by default, rendered in the district court of Trinity county, March 23, 1878, in favor of Thomas Withers and against A. J. Frisby and Geo. Gibson. Appellee's title was derived from Thos. Withers, his uncle, who bequeathed to him " my undivided interest, being four-fifths, in the Amos Donovan league of land in Trinity county, Texas." Defendants Gibson and Frisby alleged that the judgment was rendered upon a compromise agreement made between them and the plaintiff's attorney in that suit, to the effect that Gibson and Frisby were to have relinquished and conveyed to them the land claimed by them, being four hundred and thirty-seven acres, and same now claimed by them, and being included in the conflict between the Donovan and Ortega grants; that they had taken all necessary steps to defend the suit, as plaintiff knew, and that plaintiff and his attorney admitted that the Ortega grant was the oldest, and they could not recover against said defendants as to so much of the land that conflicted with the Ortega grant; that plaintiff and his attorney agreed to make them deeds to the tracts claimed by them if they would let judgment go by default.

Appellee exhibited a regular chain of title from the original grantee to his father, Robert W. Withers, Sr., under whose will he claimed. In his will the testator directed his executors to sell certain property in Alabama to pay his debts, and provided that if said property was not sufficient to pay the debts then so much of his lands in Texas "may be disposed of as will effect the same." The testator appointed his brother, Dr. Thos. Withers, of Virginia, and Allen C. Jones as his executors, without bond, and requested them to serve till his son Robert W. should become twenty-five years of age, but his son was not named as executor. The will was probated in Alabama, November, 1854. Jones alone qualified as executor. October, 1860, Jones resigned and Robert W. Withers, Jr., was appointed administrator *de bonis non* and gave bond.

Appellee read in evidence a deed from Robert W. Withers, Jr., signing as executor, etc., and Mary D. Withers, widow of the testator, conveying to Dr. Thos. Withers the Donovan league, dated November 1, 1871, and reciting as the consideration a note due the grantee by said testator's estate, dated January 10, 1854, for $6,964.78 and interest, and reciting that the deed was made by virtue of authority conferred in the will. There was no order of court authorizing the sale. .

The court charged that the legal effect of the deeds, etc., adduced

by appellee was to vest in him the legal title to the Donovan league. A contrary charge was asked by appellants but refused.

The evidence regarding possession was lengthy and need not be detailed.

Gibson, one of the defendants, was a surveyor, and undertook to locate the Ortega grant by marked lines. Being cross-examined he stated that he found no beginning corner. There is no fixed point called for in the field notes which would locate the Ortega without recourse to the lines and corners found; there are many shoals up and down the river which might be called "falls," and none more particular than the rest. The lower Ortega is based on the Bodilla, the Bodilla on the upper Ortega, and the upper Ortega on the Musquiz, but this last grant or survey is unknown. He was directed to the lines traced by him by persons who said Frank Wright, an old settler, had said they were the lines of the Ortega; Wright had the reputation of making lines to suit himself, but witness knew of no interest he had in the Ortega grants.

Enoch Broxson testified that: " Taking all things in consideration, I do not think I would be free to state under oath that I had or could identify the Ortega grant. For lack of descriptive field notes I think it out of my power."

*Denson & Burnett,* for appellants, cited: Giddings *v.* Steele, 28 Tex., 752; Freeman on Judgments, sec. 330; Tippett *v.* Mize, 30 Tex., 362; Langley *v.* Harris, 23 Tex., 564; Peyton *v.* Barton, 53 Tex., 298; Texas Land Co. *v.* Williams, 51 Tex., 52.

*Nunn, Williams & Corry,* for appellee, cited: Murchison *v.* White, 54 Tex., 85; Pilcher *v.* Kirk, 55 Tex., 208; Norris *v.* Hunt, 51 Tex., 609.

STAYTON, ASSOCIATE JUSTICE.— The judgment rendered in favor of Thomas Withers, under whom appellee claims, against A. J. Frisby and George Gibson, for the land in controversy, under the facts appearing in the record, is binding on Dan Frisby, who is shown to hold through A. J. Frisby by title acquired since that judgment was rendered, as is it on George Gibson, who was a party to it.

Under the facts pleaded by these defendants the judgment was not void, and could only be set aside, if at all, by a direct proceeding for that purpose.

Such was not the character of the proceeding in this cause. None of the parties to that judgment except Gibson are parties to this action.

Under such facts, the court did not err in excluding the evidence which was offered for the purpose of attacking that judgment.

We are of the opinion that the request made by Robert Withers, Sr., in his will, which appointed Thomas Withers and Allen C. Jones executors, to the effect that they should serve as executors until his son Robert became twenty-one years of age, cannot be held an appointment of the son to the executorship when he should arrive at the designated age.

The testator owned a large estate, and was evidently indebted at the time he made his will, in which he gave very full directions for the management of his estate and the care of his family.

The request evidences the desire of the testator that his estate should be administered in accordance with his directions by those persons, or one of them, to whom alone he gave power to act, and that they or one of them should so control until such time as his son Robert became twenty-one years of age, and that it should not pass into any other management or even into the hands of the bene-. ficiaries named in the will prior to that time, rather than a desire that the son should at that time become the executor.

From the condition of the estate and condition of the testator's family, many good reasons may have existed for his desire that the estate should remain in the hands and control of the executors named; but it would accomplish no good purpose to speculate upon his motives.

The will contains no words indicating the intention of the testator that his son Robert should ever be its executor, or should ever possess the powers which the will expressly conferred on the persons named as executors.

The powers given by the will to the executors were personal and could not be exercised by another, even though such other person on the resignation of the executors might be appointed to administer the estate under the will by the proper probate court. Langley v. Harris, 23 Tex., 565; Tippett, Adm'r, v. Mize, 30 Tex., 362.

Recognizing the fact that the will did not nominate him an exec utor, Robert Withers, Jr., upon the resignation of the only one of the executors who qualified, received the appointment of administrator *de bonis non* with the will annexed.

Under this he could administer the estate in accordance with the will, under the orders of the proper court, but such an appointment did not carry with it the right to exercise the discretionary powers conferred alone upon the executors named in the will.

While, however, this is true, still we are of the opinion that the

court did not err, under the facts of the case, in instructing the jury that the conveyance from Robert Withers, Jr., and Mary D. Withers, the widow of Robert Withers, Sr., was sufficient to pass to Thomas Withers the title to the Donovan league, there being no question that it belonged to Robert Withers, Sr., at the time of his death.

The will of Robert Withers, Sr., was probated in 1854; one of the executors acted under it until 1860, and the deed to Thomas Withers was executed November 1, 1871, by Robert Withers, Jr., and Mary D. Withers, as appears, for the purpose of paying to Thomas Withers a debt due to him from the estate of Robert Withers, Sr., which then amounted to $12,533.14.

Robert Withers, Jr., Mary Withers, the widow, and the plaintiff were distributees under the will. It does not appear whether the property was community property owned by Robert Withers, Sr., and his wife Mary, nor whether she had elected to take under the will or not. The presumption would be that it was community property.

Whether the deed from Robert Withers, Jr., could otherwise operate or not, it is such as would pass his interest in the land as an heir to his father, or as distributee under his will, and it would also pass whatever title Mrs. Withers had in the entire league.

These interests have vested in the appellee and are sufficient to enable him, even if less than title to the whole of the league, to maintain this action. Sowers v. Peterson, 59 Tex., 216; Pilcher v. Kirk, 60 Tex., 162.

If it were true that no interest whatever passed to Thomas Withers by the deed before referred to, even then the appellee shows such title as would enable him to maintain this action, for he is a distributee under the will of his father, Robert Withers, Sr., and as such, if the property still belongs to the estate, he is an owner of an undivided interest in the league, which is title enough as against the defendants.

Although the will was probated in this state, no administration is shown to have been taken out here, and after the lapse of so great a period of time as has passed since the death of Robert Withers, Sr., it would be presumed that there was no necessity for such administration when this action was brought; and if the appellee showed no other title to the land than that of distributee under the will, even then there would have been no error in the charge of the court which could have affected the appellants injuriously.

The land in controversy is shown, beyond question, to be the

Donovan league; but it is contended that the land which is claimed by the appellants is a part of the Ortega grant, with which it is asserted the Donovan grant conflicts.

Although the appellants claim the land described in their several answers as a part of the Ortega grant, which is older than the Donovan, yet they in no way connect themselves with the Ortega title.

The Ortega grant, therefore, can be of no avail to appellants unless as outstanding title superior to the Donovan.

To avoid the effect of outstanding title, the appellee relied upon two things:

1st. That it rested on the appellants to show the true location of the Ortega grant; that a conflict existed between it and the Donovan which covered this land, and that in these matters the appellants had failed in proof.

2d. That, if the Ortega grant was located, identified and covered the land in controversy, then the appellee had title to the land in conflict between the two grants by limitation.

The question whether there was a conflict between the two grants was submitted fairly to the jury, and they were informed, if such conflict existed and embraced the lands claimed by the appellants in their pleadings, then they would find for them, unless they found for the appellee on the statute of limitation.

It is, however, claimed that the court erred in a paragragh of the charge which is: "In order that the defendants recover under this paragraph, it is necessary that the Ortega grant be identified, and that they show that the land in controversy, or a part thereof, is within the limits of said grant; and the Ortega grant must contain such a description of the land included therein, so that it can be identified on the ground with reasonable certainty, either by the terms of the grant itself, or by writings referred to therein; and a grant cannot be aided by marked lines made subsequently on the ground. It is for you to determine, from all the evidence in the case, whether said grant has been sufficiently identified."

Whether a grant is so wanting in matters descriptive of the thing granted as to make it void for this reason may be, in a given case, matter of law to be determined by the court, while in another case it may be a question of law and fact to be determined by the jury under a proper instruction, from all the evidence in the case.

The Ortega grant was one of the latter class. It called for falls on the Trinity river and for the corner of another grant. If either of these things could be found and identified, then from the other calls in the grant it was of easy location. Whether those objects

were found and identified was a question for the jury under the evidence, which was conflicting.

During the trial a witness testified to having seen marked lines which were evidently made at some time subsequent to the making of the grant, and a part of the charge objected to was evidently intended to give the jury to understand that the locality of the grant could not be fixed by such testimony.

The charge as a legal proposition was correct, and if thought to be misleading, or if it was thought that the court should have instructed the jury, if they found the corner of the Bodilla grant, that then by course and distance the Ortega grant could be located, then such a charge should have been requested.

The jury were not restricted in their inquiry, but were told that they could look to all the evidence in the case for the purpose of determining the true locality of the Ortega grant.

The following charges were asked by the appellants and refused:

"No. 4. If, from all the facts and circumstances in evidence, the Ortega grant has been identified with reasonable certainty, and is located in Trinity county, at the point claimed by defendants, and the Donovan grant conflicts with such location, and the lands claimed by defendants are within such conflict, then you will find for the defendants."

"No. 5. If the county map of Trinity county from the general land office shows the location of the Ortega grant as claimed by defendants, then this is evidence of the identity of the grant. And if the identity and location of the Ortega grant as claimed by defendants were recognized by old settlers and acted on by the land office of this state, then this is also evidence of such identity and location."

It would have been error to give the first of these charges, for it made the right of the appellants to recover depend solely upon the fact that the land in controversy was on the Ortega grant, while if the land was on that grant, yet, if it had been held by those owning the Donovan grant for a sufficient length of time, their title would have been good notwithstanding the land was really on the Ortega grant.

The other charge asked was misleading, in that it was calculated to induce the jury to believe that the facts recited in it were of themselves sufficient to identify and locate the Ortega grant. Such was not the character of the evidence.

The court had already instructed the jury to look to all the evidence in the case to determine these questions. The evidence was

before the jury and this was enough.  The giving of such charges
is well calculated to impress on the mind of the jury the belief that
the evidence thus pointed out in a charge is entitled to peculiar
weight, and in many cases would be as hurtful as a charge which
in terms is upon the weight of evidence.

There is no conflict in the evidence, and we are of the opinion
that it shows such possession, since the year 1870, of the land
claimed to be in conflict between the Ortega and Donovan grants
as to give to the appellee title to all land within the Donovan grant
by limitation.

The court instructed the jury fully and correctly, in view of the
facts, as to the character of possession, continuance thereof and
title, which the appellee was required to show before he would be
entitled to hold if the land was on the Ortega grant.

Although there was some possession of the land shown to have
been held by the appellee through tenants, beginning in the year
1866, yet the same was not shown to be continuous, nor connected
with the possession, which commenced in 1871.  Hence, the fact
that the court did not direct the jury to disregard any possession
of the land between January 31, 1861, and 30th of March, 1870,
could not have prejudiced the appellants.  If it was thought that
the jury could be misled by the charge, one should have been asked
to prevent this.  The charge, however, must be considered in refer-
ence to the uncontroverted evidence.

The court gave the following instruction:  "9th. Peaceable pos-
session is such as is continuous and not interrupted by hostile suit to
recover the estate.  Adverse possession is an actual and visible ap-
propriation of the land commenced and continued under a claim of
right inconsistent with and hostile to another.  If you find that
there was a conflict between the Donovan league and the Ortega
grant, and that the premises in controversy, or a part thereof, was
within such conflict, then, in order for the plaintiff to recover on his
plea of possession, he must show that he either in person or by ten-
ants holding under him, or under those under whom he claims, was
in actual possession of the land included in said conflict, or of some
part thereof, as indicated above."  And refused to give charges
which would have authorized the jury to find for the appellants,
unless the appellee had shown himself to be in the actual possession
of the land in conflict, even though he may have been in possession
actual of a part under claim to the whole.

The court did not err in giving the charge given and in refusing
to give the charges refused.

If some one deriving title through Ortega to the land claimed to be in conflict between the two grants, and also owning the Ortega grant, or that part thereof contiguous to the conflict, had been in possession of the land in conflict, or had been in actual possession of that contiguous to it, or of any part of that grant, owning the whole, then such actual possession would give constructive possession, the Ortega being the older grant and superior title, to such owner, of all the land in conflict except such as was in the actual possession of some one claiming under the Donovan grant. Hunnicutt v. Peyton, 102 U. S., 369; Bremmer v. Proprietors, etc., 5 Pick., 135; Winter v. Stevens, 9 Allen, 529; Bellis v. Bellis, 122 Mass., 417; Crispen v. Hannavan, 50 Mo., 536; Hodges v. Eddy, 38 Vt., 344; Hammond v. Ridgely, 5 H. & J., 264; Burns v. Swift, 2 S. & R., 439; Orbison v. Morrison, Hawkins, 468; Wall v. Powell, 4 S. & R., 465.

No such state of facts, however, was shown; no one of the appellants were shown to derive title from Ortega to his grant, nor to any part of it, nor were any of them shown to be in the actual possession of any part of the land claimed to be in conflict.

Under such state of facts, the actual possession by the appellee of a part of the conflict, with claim to the whole, gave him such possession of the whole as would support the plea of limitation, the boundaries of the Donovan grant embracing the land. Bellis v. Bellis, 122 Mass., 417; Peyton v. Barton, 53 Tex., 302, and cases cited; Crispen v. Hannavan, 50 Mo., 536; Orbison v. Morrison, 1 Hawkins, 468.

The seventh and eighth instructions, in so far as called for by the evidence, were given in the main charge, and to have given them in the unqualified terms asked, in view of the evidence, would not have been justified.

There is no error apparent for which the judgment should be reversed, and it is affirmed.

AFFIRMED.

[Opinion delivered February 15, 1884.]