## LOEWENSTEIN v. WATTS et al.
### No. 3627.

Court of Civil Appeals of Texas. El Paso.
June 16, 1938.

Rehearing Denied July 14, 1938.

Ernest Guinn and Joseph G. Bennis, both of El Paso, for Loewensteins.

Kemp, Nagle & Smith and Armstrong & Jaffe, all of El Paso, for administrators.

WALTHALL, Justice.

This case presents an appeal by both contestant and applicants. We think we may consider the matters involved in each appeal and undertake to do so, and will consider and designate the State National Bank of El Paso and J. J. Watts as appellants, and Estella Loewenstein, joined by her husband, Joseph Loewenstein, as next friend and guardian of the persons of Corinne Helena Johanna O'Brien and Mary James O'Brien, minors, as appellees.

The matters involved here originated in the Probate Court of El Paso County, and by appeal were taken to and tried in the Forty-first District Court of El Paso County, and the case was appealed therefrom by both parties to this Court.

The statement of the nature and result of the suit as found in appellants' brief is substantially a correct statement of the history and the matters involved in both former courts, and we adopt the statement and will add thereto such additional statements of facts as we find necessary in considering the several assignments and cross-assignments.

James J. O'Brien and Corinne Duran O'Brien were husband and wife. James J. O'Brien died in El Paso County, Texas, on the 3rd day of February, 1926. Corinne Duran O'Brien died in El Paso County, Texas, on the 8th day of February, 1926. They were survived by two infant daughters, Corinne Helena Johanna O'Brien and Mary James O'Brien. Mr. O'Brien at the time of his death owned property situated in El Paso, Texas, and was a partner with Joe Mogul in property and in a cafe and saloon business situated in the City of Juarez, State of Chihuahua, Republic of Mexico. He left a will in which he directed that upon his death the legal title to all of the property for a period of twenty-one years should pass in trust to J. J. Watts and O. R. Armstrong, with power to control, manage, and handle the same, sell, mortgage, incumber, transfer, assign or convey the whole or any part thereof as to them might seem to be for the best interest of his estate and the best interest of his beneficiaries named therein, and to reinvest, handle and control and make exchanges and compromises as might to the said Watts and Armstrong seem best for his estate and beneficiaries. He further directed that the said Watts and Armstrong pay as soon as practicable to his brother, Cornelius O'Brien, the sum of $1000, and to his mother, Johanna O'Brien, the sum of $5000, to his sister, Mary Staghler, the sum of $1000, to his sister Josie Bantien, the sum of $1000, and that such payments should be made at such time as might be best for the benefit of his estate according to the judgment of the said Watts and Armstrong as to the beneficiaries in most necessitous circumstances. He also charged or directed the said Watts and Armstrong to provide support and maintenance for his wife during her lifetime and for his infant daughters. He named The State National Bank of El Paso as the successor of Watts and or Armstrong. He named Watts and Armstrong as executors and The State National Bank as the successor of either or both of them and provided that no bond should be required of them as executors or trustees and no further action be had in his estate other than to probate the will and return an inventory, and directed that Joe Mogul should have all the rights of a surviving partner in the partnership business and property in Juarez, Mexico.

Mrs. O'Brien left a will in which she gave $100 to the Ysleta Catholic Church, $1000 to her father, Jesus M. Duran, to be paid over to them as soon as Watts and Armstrong might determine to do so without embarrassment to the trust provisions of her will. She passed the legal title and possession of her property to Watts and Armstrong for a period of twenty-one years and directed that they have the same powers as given to them by her deceased husband, Mr. O'Brien, and that they so handle her property in connection with her deceased husband's property as to provide ample maintenance, support and education for her two infant daughters, and that they make payments for the support, maintenance and education of the daughters to Mrs. Estella Loewenstein, with whom she placed said daughters. She named The State National Bank of El Paso as successor of Watts and or Armstrong with the same powers. She named Watts and Armstrong or The State National Bank of El Paso as executors and provided that no bond or security should be required of them as executors or trustees and that no further action be had in her estate other than to probate the will and return an inventory thereof.

On February 10, 1926, Watts and Armstrong filed applications to probate the wills of Mr. and Mrs. O'Brien and on March 3, 1926, the wills were ordered probated and Watts and Armstrong were appointed executors without bond and on the same day they took the oaths of office as such. Thereafter, Mrs. Estella Loewenstein, as temporary guardian of the persons and estates of the infant daughters, filed applications to set aside the orders probating the wills of Mr. and Mrs. O'Brien and on the 7th day of April, 1926, the court set aside the orders probating the wills and on the same day entered orders re-probating the wills of Mr. and Mrs. O'Brien and appointing Watts and Armstrong as executors of the respective estates. Then on April 15, 1926, Watts and Armstrong and The State National Bank of El Paso, in application filed by their attorneys, asked that "letters testamentary" be issued to them and for other orders. On May 4, 1926, the Probate

Court entered orders appointing Watts and The State National Bank of El Paso as administrators with the wills annexed of the estates of Mr. and Mrs. O'Brien, and required a bond of $45,000 in each estate. Thereafter, Watts and The Bank qualified as representatives of the estates under the orders of the Probate Court. Armstrong had theretofore waived his rights to be appointed administrator. The State National Bank of El Paso has heretofore qualified and is now and at all relevant times herein has been the guardian of the estates of the two infant daughters.

On the 19th of August, 1935, Mrs. Estella Loewenstein, as guardian of the persons and as next friend of the infant daughters, hereinafter called minors, joined by her husband, Joseph Loewenstein, filed in the County Court in Probate an application for the removal of Watts and the Bank and for an accounting, and on the same date the court issued a notice for them to show cause. On August 31, 1935, Watts and the Bank filed answers to that proceeding. On the same date Watts and the Bank as executors and administrators with the wills annexed, filed an application to resign in the County Court in Probate and along with such application tendered their verified exhibit of the condition of said estate on which notice was issued returnable on the 16th day of September, 1935, at a regular term of said court. Thereupon, Estella Loewenstein, as guardian of the persons and next friend of the minors, filed a contest to such final account and application to resign. The application, account and contest thereof came on to be heard in the County Probate Court on the 9th day of October, 1935, and judgment was rendered on the 3rd day of January, 1936, which fixed the sum of money in the hands of Watts and the Bank as being in the amount of $2062.38. Mrs. Estella Loewenstein, as next friend of the minors, appealed from this judgment to the Forty-first Judicial District Court of El Paso County, Texas, hereinafter called trial court.

The application, account and contest came on to be heard in the trial court before the judge and without a jury on the 10th day of September, 1936, and the term of court having been extended under order of date the 31st day of October, ·1936, the trial court rendered its judgment on the 15th day of January, 1937.

This· judgment approved the final account and determined that the estates were in fact indebted to The State National Bank of El Paso. Thereupon, in open court the contestant and applicants duly excepted and gave notice of appeal.

We note in appellants' brief they state they deal only with those items that were resolved against the Bank and Watts by the trial court, and which they note consist of:

1. Interest disallowed the Bank and or Watts on the money borrowed from or advanced by the State National Bank to take up the Coggin indebtedness of $3105.

2. Interest disallowed the Bank and or Watts on money borrowed or advanced by the State National Bank for support and maintenance of the minors, $60.

3. Interest disallowed the Bank and or Watts on money borrowed or advanced by the State National Bank to pay legacies, $301.87.

4. Payments of interest disallowed the Bank and or Watts on James J. O'Brien note of $2000 held by the Bank at the time of the death of O'Brien, $160.

5. Extra compensation approved by the Probate Court in 1929 in favor of Watts, $1200.

6. Commission disallowed Watts on receipt of $25,000 cash in sale of property to Manual Salazar, $625.

Appellants note in their brief that the removal proceedings appearing in the transcript apparently have never been acted upon by the County Court and were not included in the appeal of Mrs. Loewenstein to the District Court from the County Court, as nothing appears in her appeal bond from the judgment of the County Court indicating action by the County Court upon such removal proceedings.

### Opinion.

■ The two minors mentioned in the record are in this suit by next friend, and are in no sense defendants and have not been personally served with citation. We overrule appellants' assignments asserting error in rendering judgment against them without the appointment of a guardian ad litem to represent them.

The following claims against the O'Brien estates, as disclosed by the pleadings and findings of fact by the court, constitute the

main contention between appellants and appellees in this suit:

An indebtedness to the State National Bank as represented by a note for the sum of $9,000, with interest thereon from July 13, 1935. This obligation arose in the following manner: On June 14, 1930, the O'Brien estate was indebted to J. A. Coggin in the sum of $9000, secured by a lien on land, the indebtedness existing at the death of James O'Brien. Coggin was demanding payment of his notes, which had been allowed. On July 13, 1935, J. J. Watts and the State National Bank filed an application to borrow the sum of $9000 to take up the Coggin notes (consisting of three notes of $3000 each) until someone could be found who would refinance the loan, the loan to be evidenced by a note for $9000 payable to the State National Bank and signed by Watts and said Bank, as administrators, the note to bear interest at the rate of eight per cent per annum.

On August 8, 1930, the Probate Court entered an order authorizing the loan. The loan was consummated. The note has been renewed every ninety days. Watts and the Bank as administrators allowed the claim. On April 22, 1932, the Probate Court allowed said claim. The claim recited it had been duly presented to and allowed by J. J. Watts and O. R. Armstrong, as independent executors. The claim further set forth that the administrators were theretofore authorized to borrow the money from the Bank and for the Bank to take over the Coggin notes and the lien securing same.

On March 29, 1929, J. J. Watts as administrator filed claim for $1,200 as compensation for extra services rendered the estate. On the same date the Probate Court allowed same. The District Court found that the service was not for the Estate being administered, but for services rendered the O'Brien Estate in Mexico.

What is referred to in the Court's findings of fact as "the Layer note" was one of a series of notes executed by James O'Brien on April 16, 1924, to W. F. Layer in part payment for land and in which a vendor's lien was expressed. The trial court found the note was a valid and existing claim against the estate, and that at the time of its payment in 1929 the Bank had no interest in the note.

The $1341.17 paid by the administrators to the Bank in 1927 was the balance of a note signed by the Frontier Improvement Company, a corporation, and O'Brien individually. The Court found that on dissolution of the corporation its assets vested in the O'Brien Estate subject to the lien of its unpaid creditors; that the claim was not presented for payment within six months after the qualification of the administrators. The court concluded that in the administration of the affairs of the corporation, the administrators had a right to pay same and should receive credit.

The court found and stated that "in relation to the payment of the $2000.00 note paid to the Bank by Watts in his capacity as executor of the estate in Mexico, contestants (defendants) cannot here complain. The jurisdiction is in the Mexican court, if ground of complaint there be. On the claims for $26.67, alleged to have been paid by the administrators, and $40.00 as interest on said $2000.00 note, such note was never allowed by the court, and the payments were made at a time when same was barred by limitation as to the claim of an administrator."

We have not been able to identify the above items in the record but assume that the note and interest payments referred to were at the time proper claims against the O'Brien Estate, and, as in the finding, were paid by Watts as executor under the will.

In the matter of the claim for allowance by the administrators for $1250 as commission on a $25,000 sale of property (of the estate) the brokerage firm of J. J. Watts & Company were paid a commission of $1250. The trial court found that "J. J. Watts is not interested in this firm further than having a desk in their office, and it is the custom of the members to pay to Mr. Watts on business coming to the firm through Mr. Watts. In payments made to Mr. Watts by the firm it is probable that this commission collected by them was taken into consideration. The co-administrator had no interest in commission allowed the firm of J. J. Watts & Company."

In the matter of rents collected by the administrators, the trial court found that they employed J. J. Watts & Company to collect the rents and to cause the necessary incidental repairs to be made. Under the contract with the brokers they were to receive three per cent on rents collected, and from amounts expended for repairs; that it was reasonably necessary for the employment of a broker to collect the rents and look after the repairs, and which amounts

permitted to be deducted the court found to be reasonable and legitimate.

The court concluded as matters of law:

1. That Stella Loewenstein has the legal capacity, as next friend of the minors, to contest the final account of the administrators. The minors are parties interested in the final account of the administrators.

2. As administrators, the Bank and Watts were not entitled to exercise any of the trust powers conferred by the will. Their only powers were those of administrators appointed by the court. The powers of the trustees were in abeyance until the conclusion of the administration.

3. The administration of an estate is a trust of expedition and up to the time of the enactment of the Acts of 1931, page 842, Chapter 352, section 1, appearing in Pocket Supplement, 1936, Vernon's Annotated Civil Statutes as Article 3432a, an administrator, with or without the authorization of the County Court, was without authority to renew or extend any obligation owing by or owing to an estate.

4. An administrator is without authority to borrow money to pay legacies or to pay claims against the estate. A court cannot authorize an administrator to exercise powers not conferred by law. An order of a court purporting to allow an administrator to exercise powers not conferred by law is void, and affords no protection for action taken in pursuit thereof. The payment of interest by the administrator Bank to itself, on its notes given after the administration was illegal, and credit therefor is denied. In so far as the money actually advanced by the administrators and paid on legitimate claims against the estate, it or they are entitled to credit therefor. The administrators are not entitled to interest on such advances, nor to the statutory commission for collecting and paying same out.

5. Article 3544, Vernon's Annotated Civil Statutes, 1925, inhibits an administrator from either directly or indirectly purchasing a claim against the estate. The order authorizing the administrator to borrow $9,000 from itself and to give its note as administrator, with its co-administrator, to itself, bearing eight per cent interest, and assigning to it the Coggin notes, and the liens securing same, is void and of no force or effect.

6. The allowance of the claim of the Bank of the Coggin notes is void; the claim in and of itself showing the illegality thereof. The claim is ordered cancelled. This transaction by the administrator was not in bad faith. It being entirely void, there is no legal reason why the Bank should not be allowed credit for the $9,000 advanced as payment for the Coggin notes. The $9,000 is allowed as money advanced by the administrator for the estate; interest is denied thereon, as well as commission for the collection or disbursement thereof.

7. Interest at six per cent. on the advancements by the Bank is disallowed, for the reason that the mistakes as to the law contributed to the undue prolongation of this administration. Commission on the collection and expenditure is disallowed for the reason that it does not represent the collections and credits, therefore is allowed only on equitable principles.

8. The $1200 claimed by Watts and allowed by the Probate Court as extra compensation is disallowed because same shows on its face that it is not for services rendered the estate being administered.

9. The claim of Watts for half of $1250 as commission on the sale of property for $25,000 is disallowed. While administrators may, in cases of necessity, employ a broker to effect a sale, if, either directly or indirectly, he has or expects an interest in the commission paid or to be paid to such broker, he forfeits his right to the statutory commission.

The State National Bank, in respect to this commission, is in a different situation from its co-administrator, and it is entitled to be credited with one-half of such commission of $1250.00.

10. Commission of five per cent. will be allowed on amounts collected and amounts expended, except as herein indicated.

11. That the claim on the Coggin notes be cancelled, the accounts be restated on the principles here announced, and the judgment be certified to the County Court for enforcement and observance.

The trial judge filed supplemental conclusions of law. Those we think to refer to are: His statement that Article 3544 of the Revised Civil Statutes forbids an administrator to purchase a claim against an estate being administered, and that a judgment of any court which authorizes an

administrator to do so, or which subsequently allows a claim so purchased though sanctioned by the County Court, is a nullity. The trial court also concluded that the attack on the $9,000 in this case was not collateral but direct.

The trial court entered final judgment on the matters appealed from the Probate Court in the administration of the O'Brien estate from the date of the appointment of Watts and the Bank and in the decree stated the several items of charges and disbursements as follows:

"That the administrators be charged with cash received in the sum of $81,062.-48, that the disbursements of $1200.00 paid to J. J. Watts as extra compensation and $3,626.87 paid as interest to administrator Bank be disallowed, and that they accordingly be credited with disbursements in the sum of $71,318.63, leaving a balance of $9,-743.85 of said estate in their hands as of August 5, 1935; that said administrators be not allowed administrators' commissions on the sum of $11,547.74, representing advances to said estate by said administrator State National Bank, and reflected in cash received, and that said administrator be not allowed administrator's commissions on the sum of $29,663.70, reflected in disbursements representing advancements to said minor heirs in the sum of $11,020.73, repayment to said Bank administrator of advancements made by it to said estates in the sum of $10,042.97, and payment of legacies in the sum of $8,600.00, and the said administrator J. J. Watts be not allowed his administrator's commissions in the sum of $625.00 on the sale of lots (described), and that it is therefore ordered, adjudged and decreed that said administrators' commissions be and they hereby·are fixed in the following sums, to-wit: $2,779.24 to the administrator State National Bank and $2,154.24 to the administrator J. J. Watts, and that said administrators be and they are hereby authorized to retain said amounts from said sums of said estates in their possession, and after deducting said administrators' fees, it is accordingly ordered, adjudged and decreed that the balance in their hands belonging to said estates as of August 5, 1935, the date said application and account were filed, be and the same is hereby fixed in the sum of $4,-810.37.

"It is further ordered, adjudged and decreed that the claim on Coggin notes and allowance thereof be cancelled and that the Bank administrator be allowed a credit of nine thousand ($9,000.00) dollars for money advanced for the use and benefit of the said estate, the administrator Bank being authorized to apply towards satisfying said claim, said sum of $4,810.37, and to collect the balance of said claim amounting to $4,189.63 from other assets of the estates. Except as otherwise herein provided, said account is approved in all things."

The court taxed all costs against Watts and the Bank, and stated that the judgment is without prejudice to the rights of Watts and the Bank as testamentary trustees under the wills of O'Brien and wife.

Both parties appeal.

 Without discussing them severally, we overrule appellants' assignments pertaining to the failure of the trial court to appoint a guardian ad litem for the two minors, and in taking jurisdiction, and in holding that Estella Loewenstein had legal capacity to represent the minors as next friend.

Appellants assign error to conclusion and order of the trial court in holding that the· applicants (appellants) were not entitled to· exercise any of the trust powers conferred by the wills and that such powers were in. abeyance until the conclusion of the administration, and in holding that the applicants (appellants) were without authorization to renew and extend the obligation fixed by the Coggin notes, and in hold-· ing that the orders of the County Court. sanctioning the advances made by the ap-· plicant Bank for the purpose of paying legacies, and taxes, and support of the minors were void and afforded no protection to applicants in their claims for credit on this final account for interest for the use of such money by the estate.

The Coggin three notes became due and he demanded payment, the estate was without funds to pay them. Applicants approved the claim. Applicants, for the benefit of the estate, made application to the County Court to borrow from the Bank the sum of $9,000 to take up the Coggin notes. The court, on August 8, 1930, entered an order authorizing the applicants to borrow the money from the Bank for the purpose stated, and directed that the note be delivered to the Bank and that it be renewed from time to time until such time as said indebtedness could be refinanced in-

to other hands. The Coggin notes bore interest at the rate of 8% per annum, interest payable semi-annually, and the note to the Bank was made to eight per cent. interest, but later the interest was reduced to seven per cent. The County Court in 1932, after a hearing, approved the claim in full. The record does not show that the judgment of the County Court approving the claim has been reversed or otherwise vacated. The record shows that the borrowed money was used to pay the Coggin notes.

The trial court held that, under Article 3544, an administrator is without authority to pay unapproved claims against the estate, and that a court cannot authorize an administrator to exercise powers not conferred by law, and that an effort to do so is void.

The article inhibits an executor or administrator from purchasing for his own use any claim against the estate he represents.

■ We doubt whether the article has application under the unquestioned facts. The Bank was an administrator of the estate with the wills annexed. The wills gave the executors the authority to handle, sell, mortgage, encumber, transfer, assign or convey the whole or any part of the estate for such consideration and upon such terms as may seem to the best interest of the estate, to make any exchanges and compromises as may see best. The Coggin notes were due and payment demanded. At the time and under the financial conditions then existing, no one could be found to refinance the loan or take up the notes. The Bank expressed a willingness to do so, with the consent of Watts, and, under the express order and permission of the Probate Court, did advance the money to take up the three notes, the permission to the Bank of the Court to take up the notes and to extend the time of payment from time to time apparently was until some other person could be found who would refinance the loan financed by the Bank. We are aware of the statements and rule announced by Judge Cardozo, speaking for the New York Court of Appeals, Wendt v. Fischer, 243 N.Y. 439, 154 N.E. 303. See, also, Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 547, 62 A.L.R. 1, and referred to by appellees Loewenstein et vir., when he says a trustee, in dealing with trust property, is held to something "stricter than the morals of the market place," and that "the law 'does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case.'" (page 304.) However, by Article 3436 of the statutes, persons capable of making wills may so provide in their wills what is expressed in the wills before us, the granting of certain expressed powers and requiring the performance of certain duties. The persons appointed to execute wills will not be allowed to promote their personal interests to the injury of the heirs or beneficiaries, and anything done by them which tends to defeat the ends of the trust reposed, or which is forbidden by law, the courts will refuse to be done. In this case what was done, was, in each instance, permitted by orders of the court under the circumstances disclosed in the record.

■■ We have concluded that the allowance to the Bank of the interest provided in the note by the Probate Court, in view of the wills under which the Bank was acting, and from which no appeal was taken, was not error. But should we be mistaken in so holding, the judgment of that court, if it had a right of decision in the matter, as held in Dallas Joint Stock Land Bank of Dallas v. Forsyth, 109 S.W. 2d 1046, by the Commission of Appeals, though erroneous, is not void. The Probate Court, acting within its constitutional and statutory powers, is a court of general jurisdiction, and, when so acting, its judgments are as immune from collateral attack as are those of the district court when acting within the powers conferred on it by law.

We think the case of Price v. Smith, Tex.Civ.App., 109 S.W.2d 1144, by the Eastland Court, and the cases there referred to, have application to and are decisive of all the issues in this case. We need not review the case here. We do not think the trial court had either of the above two cases before him on the hearing of this case.

■ The trial District Court was trying this case on appeal from the County Court, and acquired only such jurisdiction on appeal as the County Court had as a court of original jurisdiction. Cogley v.

Welch, Tex.Com.App., 34 S.W.2d 849. There is nothing in the record to indicate that any effort was made in the County Court, or that the Probate Court, at any time, intended to annul or suspend or hold in abeyance the trust provisions of the wills, but, on the contrary, the record appears to indicate that the Probate Court considered the trust powers granted remained in force and effect. In applications to do whatever was wanted to be done applicants, in each instance, so far as we have observed, called the Court's attention to their trust powers, and the Court gave sanction to what was done. The orders and confirmations of sales of property of the estate may not have added any authority to that given by the wills which could have been exercised under Article 3448 of the Statute, without any order of the court, but such orders did not annul, or have the effect of annulling, or suspending, or of holding in abeyance the powers granted by the testators. The wills were re-probated on April 7, 1926, and letters testamentary were directed to issue to Watts and Armstrong, and they qualified with the wills annexed. In Republic National Bank & Trust Co. v. Bruce, Tex.Com.App., 105 S. W.2d 882, it is said that (page 885), "By accepting the trust, a trustee becomes bound to execute it, in accordance with the provisions of the trust instrument," unless such directions are declared invalid or decreed otherwise, and he must do so without any request from any body, and he can be relieved only by consent of all beneficiaries, or by putting the administration of the trust in the hands of a court of equity. Watts, apparently, has been acting as executor and trustee and under the supervisory orders of the Probate Court. See McCanless v. Clough, Tex.Civ.App., 298 S.W. 643.

The trial court found that the failure of the administrators to close the administration in three years as fixed by the statute, has not benefited the estate, and that no legitimate reason is shown why administration was not closed.

The wills passed the legal title of the properties to applicants and not to the minors and fixed the period of duration of administration at twenty-one years, and expressly provided that Watts and the Bank might, in their discretion, close the administration in three years after the death of the testators.

We think we need not discuss separately the disposition to be made of each item of the final account of Watts and the Bank if, as we have concluded, they were at all times acting under the provisions of the wills and under the express orders of the County Court sitting in probate, which items were filed and approved in the administration at previous terms settling the items and expenditures down to September 1, 1934, since there is no pleading or evidence suggesting fraud, accident or mistake.

Chief Justice NEALON was disqualified and did not sit in this case.

The judgment of the trial court is reformed consistent with the above.

On Motion for Rehearing.

Mrs. Estella Loewenstein, guardian, joined by her husband, Joseph Loewenstein, as next friend and guardian of the persons of the minors in the suit, filed a motion for a rehearing and to have the opinion heretofore rendered set aside.

In the opinion this Court held, in effect, that the administrators with the will annexed might exercise powers of independent executors as expressed in the wills, after the independent executors had filed application in the Probate Court in the estate, stating that the wills had been probated and that they had been appointed independent executors, but that in the contest it had been agreed that the said executors should continue the administration of the estate in conjunction with the State National Bank, not as independent executors but as administrators with the wills annexed, and prayed for appointment as administrators with the wills annexed. Later Armstrong filed a waiver of any right to appointment as administrator, and on May 4, 1926, the Probate Court entered an order appointing Watts and the State National Bank administrators with the wills annexed; each qualified in each estate as administrators and have so acted in the affairs of the estates. We were in error in so holding. The law is that where an independent executor named in the will refuses to act as such, the Probate Court may not appoint an administrator with the powers of an independent executor. The Probate Court may appoint an administrator only under the general law. In re Estate of Grant, 93 Tex. 68, 53 S. W. 372; Frisby v. Withers, 61 Tex. 134;

Langley v. Harris, 23 Tex. 564; Vardeman v. Ross, 36 Tex. 111; Armstrong v. Anderson, Tex.Civ.App., 55 S.W.2d 235, 236, 241. The courts hold that an administrator thus appointed derives his power from the general law and not from the will. In this connection we might say that after the surrender of their authority to act as trustees or independent executors under the wills, and the appointment of Watts and the Bank as administrators of the estates, resort could not be had to the wills for source of power to act, but their authority and power to act was derived solely as administrators, and they, being creatures of the statutes, have no powers except those conferred by the statutes. 13 Tex.Jur. p. 749, Sec. 173, and authorities there cited. Whatever is said in the opinion contrary to the above is withdrawn.

■ The indebtedness of the estates in the matter of the Coggin notes, discussed in the opinion, came up for disposition before Watts and the Bank as administrators of the estates. We need not review what we there said. The principal of the notes was allowed by both the Probate Court and the trial court as a correct charge and indebtedness against the estates, though on different grounds. The Probate Court, in effect, permitted the Bank to advance the money to take up the notes and allowed the Bank interest at the rate of eight per cent per annum for the use or detention of the money. The trial court refused to allow the Bank any interest. The practical difference between the courts, as we view it, other than the law involved, was the matter of the interest. We thought, in writing the opinion, and still are of the opinion, that in taking up the Coggin notes, under the circumstances and under the permission and direction of the Probate Court, the purchase of the notes by the administrator Bank was not such a purchase for its own use as to come under the inhibition of Article 3544 of the Revised Civil Statutes. Our conclusion of the question presented is not free from doubt, but if we are not in error the Bank should be allowed to receive back its money advanced with interest and its commission for disbursement. We also now hold that no commission should be allowed for paying legacies. Article 3690, R.S.

To the extent of the above matters discussed the motion is granted; as to all other matters the motion is overruled.