MRS. STELLA LOEWENSTEIN, ET VIR, NEXT FRIEND AND GUARDIAN OF CORRINE HELENA AND MARY JAMES O'BRIEN, MINORS, V. J. J. WATTS, ET AL, ADMINISTRATORS.

No. 7491. Decided February 28, 1940.
Rehearing overruled April 24, 1940.
(137 S. W., 2d Series, 2.)

*Joseph G. Bennis* and *Ernest Guinn,* both of El Paso, for plaintiffs in error.

The State National Bank of El Paso, as administrator, having purchased for its own use a claim against the estate of the decedents, such claim must be cancelled and administrator denied any portion of the estate in settlement of said claim. R. S. 1925, Art. 3544; Hendricks v. Wall, 277 S. W. 207; Richardson v. Kennedy, 74 Texas 507, 12 S. W. 219; Cline v. Niblo, 117 Texas 474, 8 S. W. (2d) 633.

*Kemp, Nagle & Smith* and *Armstrong & Jaffe,* all of El Paso, for defendants in error.

The order of the probate court authorizing administrators to borrow money for the benefit of the estate not being void, the notes executed by the administrators pursuant to such authority are valid, enforcible legal obligations aside and independent of the proposition dealing with subrogation and equitable assignments. Republic Natl. Bank & Tr. Co. v. Bruce, 130 Texas 136, 105 S. W. (2d) 882; First Natl. Bank of Bellevue v. Gaines, 121 Texas 559, 50 S. W. (2d) 774; Herbert v. Harbert, 59 S. W. 594.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is an appeal in a proceeding which originated in the probate court of El Paso County, Texas. We adopt the statement of the case as contained in the opinion of the Court of Civil Appeals. 119 S. W. (2d) 176. In order, however, that this opinion may be reasonably complete within itself, we make the following abridged statement:

James J. O'Brien died in El Paso County, Texas, on February 3, 1926. Corinne O'Brien, wife of James J. O'Brien, followed him in death five days later. Mr. and Mrs. O'Brien were survived by two infant daughters.

Mr. O'Brien left a will, in which he bequeathed the legal title to all of his property, which consisted largely of realty, for a period of 21 years to J. J. Watts and O. H. Armstrong. Such will gave these trustees power to control, manage, handle, sell, encumber, transfer, assign, and convey the whole or any part of the estate bequeathed in trust. Also, such will gave such trustees power to reinvest, handle, control, make exchanges and compromises, as to such trustees might seem to the best interests of the estate and its beneficiaries. The two infant daughters above mentioned are named in the will as beneficiaries of the trust estate just mentioned. The State National Bank is named in the will as successor to Watts and/or Armstrong. Watts and Armstrong are named executors, and State National Bank is named successor to either or both of them. The will provides that no bond shall be required either of the executors or trustees. Also, it is provided that no action shall be had in the administration of the estate in the county court, except to probate the will and return an inventory.

Mrs. O'Brien also left a will, which, in so far as this appeal is concerned, contains the same provisions as Mr. O'Brien's will.

On February 10, 1926, Watts and Armstrong filed applications to probate the wills of Mr. and Mrs. O'Brien. Both wills were duly probated, and Watts and Armstrong duly qualified as independent executors, and commenced administrating the two estates as such.

After the probate of the two O'Brien wills, and after the qualification of the independent executors above named, Mrs. Estella Loewenstein, purporting to act as temporary guardian of the persons and estates of the two infant daughters above mentioned, and as next friend for such daughters, filed applications to set aside the orders probating the O'Brien wills. On April 7, 1926, the probate court entered orders setting aside the original orders probating such wills. Of course, setting aside such probate orders operated to set aside the appointment of Watts and Armstrong as independent executors.

On April 15, 1926, Watts and Armstrong and State National Bank of El Paso made application to the probate court for letters testamentary, and for certain other orders, not necessary to mention.

On May 4, 1926, the probate court entered orders reprobating the above wills, and appointing Watts and State National Bank as administrators with the wills annexed, and requiring a bond of $45,000.00 in each estate. Watts and the Bank qualified as executors with the wills annexed, as required by the above orders. Armstrong had theretofore waived his rights under

these wills. State National Bank also qualified as guardian of the estates of the two O'Brien children, and such Bank has acted as such guardian at all times here involved.

On August 19, 1935, Mrs. Estella Loewenstein, as guardian of the persons and as next friend of the infant daughters above mentioned, joined pro forma by her husband, Joseph Loewenstein, filed in the probate court an application to remove Watts and State National Bank as administrators of these estates, and for an accounting. Watts and the Bank filed answers. Also, they filed application in the probate court to resign as executors with the wills annexed of these estates. With such application to resign, they filed final account. Mrs. Loewenstein, acting as guardian and as next friend of said minors, filed contest to such final account. The final account was heard and considered by the probate court, and judgment rendered. The case was appealed to the district court, where final judgment was again rendered. All parties appealed to the Court of Civil Appeals. On final hearing in the Court of Civil Appeals, the judgment of the district court was reformed, and as reformed was affirmed. Mrs. Loewenstein, in the capacities above indicated, has prosecuted writ of error to the Supreme Court.

It appears from the record that J. J. O'Brien died in El Paso County, Texas, on February 3, 1926, and his wife, Corinne Duran O'Brien, followed him in death at the same place only five days later. Both O'Briens died testate. Both wills were duly probated in the County Court of El Paso County, Texas. State National Bank of El Paso and J. J. Watts were appointed joint administrators of the two O'Brien estates with the wills annexed. The two estates were duly consolidated by order of the probate court, and since such order of consolidation the two estates have been administered as one. The final account of the joint administrators is here involved. It is an accounting as for the consolidated estates.

It appears that at the time of his death, J. J .O'Brien owed a balance on five promissory notes, originally aggregating the principal sum of $15,000. These notes constituted a community debt, and J. J. O'Brien's will stipulated that his debts should be paid. These notes bore 8 per cent. interest, payable annually. They contained the usual past due interest, default maturity, and 10 per cent. attorney fee clauses. They were secured by vendor's lien on a tract of land in El Paso County, Texas. The land is a part of this estate. As we understand the record, the sum due on these notes has been duly approved and allowed as a claim of one Coggin, the payee therein.

On June 14, 1930, the last three of the Coggin notes, supra, aggregating $9,000.00, were due and unpaid. In this connection, the record shows that this estate, on the date just mentioned, owed Coggin $9,000.00; that such debt was a valid, secured claim against this estate; that, under the terms of Coggin's notes and contract incident thereto, Coggin had the right to demand sale of the land securing such notes; that Coggin was pressing for payment; that Coggin was in position to add the 10 per cent. attorney's fee to his claim; that the estate was without funds to pay the Coggin claim; that the administrators had been unable to refinance the Coggin notes, and that a pressing emergency existed for the administrators to do any lawful act, or acts, with reference to such claim, that would save this estate from a substantial loss.

With conditions as above detailed, on January 14, 1930, these administrators made application to the probate court for permission to borrow from the State National Bank, one of the administrators, the sum of $9,000.00, to take up the balance due on the Coggin notes. On August 8, 1930, the probate court heard such application, and entered an order authorizing Watts and the Bank, as administrators, to borrow the sum of $9,000.00 from the Bank, the money thus acquired to be used to take up the Coggin indebtedness. In such order the court directed that the note of the estate, in the sum of $9,000.00, be executed and delivered to the Bank, and that such note be renewed from time to time until such indebtedness could be refinanced in other hands. The order authorized the note to bear 8 per cent. interest. This was the same interest the Coggin notes bore. The order under consideration also authorized the administrators to cause the lien securing the Coggin notes to be transferred to the Bank, to be held by it, along with the original notes, as collateral security for the payment of the $9,000.00 note executed to the Bank. The order finally provided:

"It is further ordered, adjudged and decreed by the Court that the administrators and trustees proceed to renew and extend the time of payment and refinance the notes evidencing said indebtedness, being part of the purchase money of the property described in deed from J. A. Coggin to James J. O'Brien of date March 17, 1925, upon such terms and conditions that may be to the best advantage of said estates and upon finding some one willing to lend said money to said estates, the Administrators and Trustees are hereby required to file a report showing the name of such person and the terms of said refinancing and renewal and to cause same to be confirmed by the Court."

In compliance with the order above described, Watts and the Bank, acting as administrators of this estate, and also acting under the orders of the probate court, executed the estate's note to the Bank for $9,000.00. The Bank took up the Coggin notes. Coggin, as a part of the transaction, transferred his notes to the Bank, and the note and contract of the estate to the Bank provided, in effect, that the Bank held the Coggin notes, and lien securing same, to secure the estate's note to it. It appears that the estate's note to the Bank has been renewed from time to time in conformity with duly entered probate orders. The interest on the Bank's note was later reduced to 7 per cent.

It appears that the administrators have never been able to refinance the indebtedness above described, and in their final account charge this estate with the estate's note to the Bank with interest. The district court allowed credit for the principal of the Bank's claim, but denied it any interest. The Court of Civil Appeals allowed the Bank to take credit for both principal and interest.

Plaintiff in error contends that the Bank cannot be allowed to take credit for any sum, principal or interest, with regard to the Coggin note and transactions incident thereto, because such transactions involve a violation by the Bank of Article 3544, R. C. S. 1925, Such statute reads as follows:

"No executor or administrator shall purchase for his own use, either directly or indirectly, any claim against the estate he represents; and, should he do so, any person interested in the estate may upon written complaint, cause him to be cited to appear before the court; and upon proof of such complaint, the court shall enter an order upon the minutes canceling the claim so purchased; and such executor or adminsitrator shall not be allowed to receive from the estate any portion of such claims."

In our opinion, when we disregard form, and look to substance, the Bank, in this instance, purchased a claim against the estate it represented as administrator. It is true, in one sense, that the estate borrowed money from the Bank to pay a claim against it. However, in lending such money, and as a part of that transaction, the Bank took over the original claim and lien securing same, with the intent of keeping same alive. It, therefore, may be said to have purchased a claim against the estate it represented. If such purchase was made in violation of the above statute, the Bank is without right or remedy in regard to the Coggin transaction, and must, under the plain provisions

of the above-quoted statute, suffer the total loss of the principal sum paid to Coggin, together with all interest thereon.

We now come to construe the above-quoted statute and to determine whether or not it was violated in the transaction regarding the Coggin notes.

■■ In our opinion, the purpose and intent of Article 3544, supra, is to require of executors and administrators absolute loyalty and undivided allegiance. The statute is highly penal. In this regard, the executor or administrator who purchases a claim in violation thereof suffers the total loss of such claim. Undoubtedly the statute was enacted to protect and benefit estates,—not to injure or damage them. If such statute is susceptible of construction, it should be so construed as to accomplish its purposes. When we read it as a whole, this statute does not absolutely prohibit any purchase by an executor or administrator of any claim against the estate he represents. On the other hand, it contains a very significant clause or phrase of qualification,—"for his own use." By the express terms of the statute, the purchase must not be made by an executor or administrator "for his own use." We think as used the phrase just quoted means for his own profit or benefit. To give the statute the construction that it prohibits all purchases of claims by executors or administrators, would be to disregard the phrase, "for his own use." This we would not be justified in doing, as it would injure estates in time of distress by preventing executors and administrators from advancing financial aid for the purpose of benefitting them.

■ In the case at bar, we think this record justifies the conclusion that, in the transactions incident to the Coggin notes, this Bank acted for the benefit of this estate, and not for the purpose of acquiring a profit or benefit to itself. We therefore hold that such Bank in such transaction did not purchase a claim against this estate "for his own use," within the meaning of Art. 3544, supra, and, therefore, in such transactions did not violate such statute.

■ Plaintiff in error contends that the Bank should not be allowed any credit on the note of the estate to it, above described, because the probate court was without jurisdiction to make the orders pertaining thereto,—that is, pertaining to the various transactions incident to the taking up of the Coggin notes and taking the estate's note with the Coggin notes attached as collateral security therefor. In this connectoin, it seems to be contended that at the time such transactions transpired, the

probate court had no power to authorize an administrator to borrow money to pay claims due by estates, or to extend such claims. We note that the matters here involved transpired prior to the effective date of Article 3432a, Vernon's Statutes 1936, Acts 1931, 42nd Legislature, page 482, chapter 352, paragraph 1. Such statute provides that an executor or administrator of an estate of any person may, upon application and order, authorizing the same, renew or extend any obligation owing by or owing to such estate. We think that in borrowing the $9,000.00 from the Bank no new debt was created. In legal effect an old debt was extended or renewed. There was a change in the person of the creditor, because the Bank took over the Coggin claim evidenced by the O'Brien notes. When the transaction with the bank is taken as a whole, it is merely shown that an old obligation owed by this estate was taken over by the Bank, and was renewed and extended. We think the probate court had power to authorize such renewal of extension by the administrators pursuant to court orders even prior to the enactment of Article 3432a, supra. Martin v. Dial (Com. App.), 57 S. W. (2d) 75. We quote the following from the opinion just cited:

"If the estate of J. C. Dial had been subject to the control of the probate court, that court would have possessed the power, upon proper showing by the executrix that a renewal of existing indebtedness was necessary to preserve the partnership's property in which the estate was interested, to have authorized her to join the surviving partner in the execution of such renewal. If she had done so under such authorization, there could be no doubt that the partnership assets would have been bound for the payment of such indebtedness. Since this is true, the joinder of Gertrude Dial as independent executrix in the renewal of such indebtedness would likewise bind the partnership assets, as she could do without order of the probate court any act which she could have done as an ordinary executrix under such an order."

We here call attention to the fact that in his will J. J. O'Brien expressly provided for the payment of his debts. We also call attention to the fact that the case just cited involved transactions occurring prior to the effective date of Article 3432a, supra.

■ Finally, we think that, even should we ignore and treat as void, the $9,000.00 note executed by this estate to the Bank, still the Bank, having taken over the Coggin notes, and not having violated any law in so doing, could take credit for them.

As we interpret the opinion on rehearing of the Court of Civil Appeals, it holds that Watts and the Bank, in acting as administrators with the wills annexed, in this instance derived their powers from the general law, and not from the wills. We further interpret such opinion to hold that Watts and the Bank surrendered their authority as trustees and independent executors under the wills, when they accepted appointment as administrators with the wills annexed and qualified under such appointment.

Watts and the Bank earnestly insist that the above holding is erroneous. In this connection, they contend that since these wills vested them with legal title to real estate, only the district court has jurisdiction to divest such legal title, either with or without their consent. In this appeal only the final account of Watts and the Bank is involved. We think the judgment of the Court of Civil Appeals should be affirmed, regardless of the question here raised. We therefore express no opinion thereon.

We have carefully considered all assignments contained in the application for writ of error, and, in our opinion, the application presents no reversible error.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered February 28, 1940.

Rehearing overruled April 24, 1940.